UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:19-cv-23113-JLK/Becerra

ISAAC INDUSTRIES, INC.,
a Florida Corporation

        Plaintiff,

v.

PETROQUIMICA DE VENEZUELA, S.A.,
BARIVEN, S.A., PDVSA SERVICES, B.V.,
PETROLEOS DE VENEZUELA, S.A.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff, Isaac Industries, Inc.'s ("Plaintiff"), Motion to Deem Service Effective, or in the Alternative, for Leave to Serve Defendants Pursuant to 28 U.S.C. § 1608(b)(3)(B). ECF No. [35]. Defendants, Petroquimica de Venezuela, S.A. ("Pequiven"), Bariven, S.A. ("Bariven"), PDVSA Services, B.V. ("PSBV"), and Petroleos de Venezuela, S.A. ("PDVSA") (collectively "Defendants"), filed a Memorandum in Opposition, ECF No. [36], and Plaintiff filed a Reply, ECF No. [37]. On May 7, 2021, the parties appeared for a hearing on this matter. ECF No. [45].[2] At the hearing, the Court requested that the parties submit supplemental briefing on certain legal issues, and the parties filed their supplemental

---

[1] This matter was referred to the undersigned for a report and recommendation by the Honorable James Lawrence King, Senior United States District Judge. ECF Nos. [38], [40].

[2] On November 16, 2020, Defendant PSBV filed a Motion Dismiss, arguing that it must be dismissed as a party to this suit because it has not been served. ECF No. [39] at 1–2. Plaintiff did not file a response to the Motion to Dismiss. At the hearing, Plaintiff conceded that Defendant PSBV has not been served. Therefore, the undersigned **RECOMMENDS** that the Motion to Dismiss as to Defendant PSBV be **GRANTED WITHOUT PREJUDICE**.

1

arguments on May 21, 2021 and June 11, 2021, respectively. ECF Nos. [48], [53]. Upon consideration of the motions, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that Plaintiff's Motion be **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND

On July 26, 2019, Plaintiff filed its Complaint, asserting one count for breach of a written agreement against Defendant Pequiven (Count I), one count for breach of contract against Defendants Bariven, PSBV, and PDVSA (Count II), and one count for account stated against Defendants Bariven, PSBV, and PDVSA (Count III). ECF No. [1]. At the crux of Plaintiff's claim is its agreement to sell $17,831,772.18 worth of 2-Ethylhexanol to Defendants Bariven, PSBV, and PDVSA. *Id.* ¶ 13. Plaintiff alleges that it delivered the 2-Ethylhexanol in accordance with the terms of the contract between the parties, but that Bariven, PSBV, and PDVSA failed to make any payments. *Id.* ¶¶ 13–14. As a result, Plaintiff states that it entered into a separate agreement with Defendant Pequiven, wherein Pequiven "undertook the obligation to make the payments owed." *Id.* ¶¶ 15–16. Plaintiff alleges that it has not received full payment under either agreement. *Id.* ¶¶ 19–21.

On August 31, 2020, the District Court entered an Agreed Order Granting Defendants' Motion to Dismiss based upon the insufficiency of service of process. ECF No. [34]. Specifically, the District Court explained that "pursuant to 28 U.S.C. 160[8](b), service of process may only be made upon an agency or instrumentality of a foreign state under one of the three authorized methods of service contained in that Section 160[8](b)." *Id.* ¶ 3. Because Defendants Bariven, PDVSA, and Pequiven are agencies and instrumentalities of Venezuela, Plaintiff conceded that process had to be completed under Section 1608(b). *Id.*

Following the Agreed Order Granting Defendants' Motion to Dismiss, and in accordance with Section 1608(b), Plaintiff attempted to effectuate service on Defendants Bariven, PDVSA, and Pequiven through the Hague Convention by delivering a copy of the Summons and Complaint along with a Spanish translation of each to the Venezuelan Central Authority. ECF No. [35] at 3. After delivering the service documents to the Central Authority in Venezuela, the Central Authority provided confirmation that the documents were received on September 10, 2019. *Id*. Thereafter, Plaintiff allegedly made several attempts to follow up on the status of service, but no response was provided by the Venezuelan Central Authority. *Id.* Thus, although Plaintiff has completed all the steps required to effect service, there has been no confirmation from the Central Authority in the twenty-one (21) months since Plaintiff delivered the documents.

Plaintiff now argues that given the Central Authority's failure to provide proof of service and the length of time that has elapsed, the Court should find that Defendants Bariven, PDVSA, and Pequiven have been served. *Id.* at 4. Plaintiff relies on Article 15 of the Hague Convention, which, in pertinent part, provides that a court may enter a default six months after the proper transmission of service documents. *Id.* at 6. In the alternative, Plaintiff requests leave to effectuate service by mail pursuant to Section 1608(b)(3)(B). *Id.*

In response, Defendants argue that Plaintiff has conceded that the Hague Convention applies, and as such, service of process under its terms must be satisfied. ECF No. [36] at 10. Defendants contend that Plaintiff must simply wait until the Central Authority responds to show that service has been completed. In support, Defendants emphasize that Article 15 does not apply here because it merely provides the minimum requirements for obtaining a default judgment, a remedy that Plaintiff has not sought. *Id.* Finally, Defendants argue that Plaintiff is not entitled to

attempt service under Section 1608(b)(3)(B) because service by mail is not a permissible means of service under the Hague Convention. *Id.* at 11.

In its supplemental memoranda, Plaintiff maintains that Article 15 of the Hague Convention has been interpreted to support a finding that service of process has been effectuated in the absence of a certificate of service. ECF No. [48] at 2. In contrast, Defendants emphasize that Article 15 is limited to those cases where a plaintiff has sought a default judgment and the defendant has failed to appear. ECF No. [53] at 2. Moreover, Defendants argue that Plaintiff has failed to prove that it cannot effectuate service under Section 1608(b)(2). *Id.* at 5. Defendants suggest that the Central Authority's delays do not render service impossible. *Id.* As a result, Defendants assert that Plaintiff is precluded from attempting service under paragraph (3), rather it must wait until the Central Authority completes service (or move for a default judgment under Article 15 of the Hague Convention). *Id.* at 5–6.

## II. ANALYSIS

This matter concerns the mechanism for effectuating service of process on instrumentalities of Venezuela. To that extent, Section 1608(b) of the Foreign Sovereignties Immunity Act ("FSIA") "governs the manner in which service is to be made upon foreign states or agencies and instrumentalities of foreign states." *Suncoast Tech Corp. v. Hondutel, Nuestra Empresa De Telecomunicaciones*, No. 11-60529-CIV, 2012 WL 5307396, at *3 (S.D. Fla. Oct. 29, 2012) (citing 28 U.S.C. § 1608).

Section 1608(b) specifically states:

> (b) Service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state:
>
> > (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or

4

>    (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or in accordance with an applicable international convention on service of judicial documents; or
>
>    (3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state--
>
>    > (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or
>    >
>    > (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or
>    >
>    > (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b).

Under paragraph (1), if there is "any special arrangement for service" between the parties, then service must be completed pursuant to said agreement. *Id.* § 1608(b)(1). Paragraph (2) is only applicable "if no special arrangement exists." *Id.* Because it is undisputed that there is no special arrangement for service between the parties in this case, service under paragraph (1) is impossible such that Plaintiff must proceed under paragraph (2).

Under paragraph (2), a plaintiff must deliver a copy of the summons and complaint "in accordance with an applicable international convention on service of judicial documents." *Id.* § 1608(b)(2). The "applicable international convention" between the United States and Venezuela is the Hague Service Convention. *See Mezerhane v. Republica Bolivariana De Venezuela*, No. 11-23983-CIV, 2013 WL 12091160, at *1 (S.D. Fla. Mar. 19, 2013) (noting that the United States

5

and Venezuela are signatories to the Hague).  The Hague specifically provides that "[e]ach contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States." 20 U.S.T. 362, T.I.A.S. 6638, Art. 2.  Upon receipt of service documents, the Central Authority "shall itself serve the document or shall arrange to have it served by an appropriate agency." *Id.* at Art. 5.

Here, the record reflects that, in accordance with the requirements of paragraph (2) and the Hague Convention: (1) Plaintiff's process server translated the Summons and Complaint into Spanish, ECF No. [35-1] ¶¶ 2–3; (2) a Request for Service Abroad of Judicial or Extrajudicial Documents was prepared, *id.* ¶ 4; and (3) the Summons, Complaint, and Request for Service Abroad were delivered to the Central Authority in Venezuela, *id*.  Indeed, Defendants do not dispute that Plaintiff has complied with the Convention's requirements.  *See* ECF No. [53] at 5–6. It is further undisputed that the Central Authority has not served the documents on Defendants in Venezuela.  ECF No. [35-1] ¶¶ 7–8.  At this juncture, it has been over one year since the Summons and Complaint were delivered to the Central Authority, but the Central Authority has failed to serve the documents and has been entirely unresponsive despite Plaintiff's attempts to follow-up. *See id.* ¶¶ 6–8.

Plaintiff contends that because more than one year has elapsed since the service documents were delivered to the Central Authority, the Court should deem service effected.  ECF No. [48] at 2–6.  Plaintiff primarily relies on Article 15 of the Hague Convention which provides that a United States court may enter a default judgment if the service documents were properly transmitted in accordance with the Convention, at least six months have elapsed since the transmission, and no certificate of service have been received.  *See* 20 U.S.T., at Art. 15.  Defendants argue that Article

15 of the Hague Convention is inapplicable because Plaintiff has not moved for a default judgment. ECF No. [53] at 2.

As a preliminary matter and after careful examination of the authorities cited by the parties, the Court finds Article 15 of the Hague Convention inapplicable because, in its plain terms, Article 15 only speaks to the issue of default judgments and Plaintiff has not moved for a default against Defendants. Specifically, Plaintiff cites various cases for the proposition that Article 15 is dispositive, but the Court does not find any of the cases cited to be persuasive because in each instance, the plaintiff moved for a default judgment against the defendant. *See Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, No. CV 20-129 (RC), 2021 WL 326079, at *9 (D.D.C. Feb. 1, 2021) (stating that "Article 15 permits a [default] judgment to be issued after a writ of summons or equivalent document, which has been transmitted abroad for the purpose of service" is delivered to the central authority); *Koch Minerals Sarl v. Bolivarian Republic of Venezuela*, No. 17-CV-2559-ZMF, 2020 WL 7646764, at *3 (D.D.C. Dec. 23, 2020) (applying Article 15 within the context of a default judgment); *Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-CV-1082-LPS, 2019 WL 6785504, at *11 (D. Del. Dec. 12, 2019) (noting that Article 15 permits the entry of a default judgment when service documents are delivered to the central authority, but the central authority does not provide a certificate of service); *Scheck v. Republic of Argentina*, No. 10 CIV. 5167 TPG, 2011 WL 2118795, at **1, 4 (S.D.N.Y. May 23, 2011) (concluding that there was proper service of process on the Republic of Argentina after the plaintiffs moved for a default against it because the "[p]laintiffs properly transmitted the documents to the Ministry more than nine months ago, and no certificate of any kind has been received even though plaintiffs made every reasonable effort to obtain it by contacting the Ministry in Argentina").

Notwithstanding the inapplicability of Article 15, the issue that remains is whether the Court can, or should, simply deem service effected. For the reasons noted below, the Court finds that a review of the statute at hand dictates that the Court not do so, but rather, that Plaintiff be required to proceed to paragraph (3) of the statute because service under paragraph (2) cannot be made. Defendant argues that Plaintiff cannot proceed to attempt service under paragraph (3) because although service has not yet been completed, it is nevertheless *possible* under paragraph (2). Specifically, Defendant posits that Plaintiff must simply wait until Venezuela's Central Authority provides a certificate of service, even if such a wait is indefinite, or at the very least, unknown. That interpretation of Section 1608(b), however, would render paragraph (3) meaningless and should be rejected.

In reaching this conclusion, the Court starts with the plain language of the statute. *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001) ("This Court has repeatedly stated that '[w]e begin our construction of [a statutory provision] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision.'") (quoting *Harris v. Garner*, 216 F.3d 970, 972 (11th Cir. 2000)) (alterations supplied). The Court recognizes that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (CA5 1972)). "Also, '[w]here Congress knows how to say something but chooses not to, its silence is controlling.'" *PrimeTime*, 245 F.3d at 1226 (quoting *In re Griffith*, 206 F.3d 1389, 1394 (11th Cir. 2000)) (alteration supplied). Here, paragraph (3) applies precisely because the language of that paragraph begins with the phrase "if service cannot be made under

8

paragraphs (1) or (2)." *See* 28 U.S.C. § 1608(b)(3). Indeed, paragraph (3) assumes that although service under paragraphs (1) and (2) may be available, it may nevertheless fail. Indeed, the statute is not written as if the options were service under paragraphs (1), or (2), or (3). Instead, paragraph (3) begins with a clause that states that it is an option only *if* service under paragraphs (1) or (2) "cannot be made," as opposed to being a separate option that is only applicable if the possibility of service under paragraphs (1) and (2) did not exist. In other words, the Court finds significant Congress' use of the word "exists" in paragraph (2) but not in paragraph (3). Indeed, Congress intended paragraph (2) to only be available when a special agreement under paragraph (1) did not "exist," not simply when service under paragraph (1) could not be made. The same is not true for paragraph (3).

Here, the Court concludes that service under paragraph (2) cannot be made. Plaintiff has taken all the steps necessary under the Hague Convention to effect service and has not been able to do so despite the fact that the matter has been pending nearly two years. Defendant does not dispute this fact. Instead, Defendant relies on *Cataldo Ambulance, Inc. v. Embassy of Kuwait*, a distinguishable case where the court found that the plaintiff could not attempt service under paragraph (3) because it never attempted to serve the Kuwait Central Authority pursuant to paragraph (2). No. CV 17-10515-LTS, 2018 WL 4222409, at *1 (D. Mass. July 17, 2018). By any reasonable measure, it appears that service cannot be made under the Hague Convention. To hold otherwise would be to accept Defendants' position that Plaintiff might have to wait in perpetuity for relief. Defendant's position, however, runs afoul of the purpose of the FSIA. Indeed, through Section 1608(b), "Congress has carefully established a flexible framework so that American plaintiffs will have a variety of acceptable methods of service, even when relations with the foreign country in question are strained; at the same time, the framework is designed to insure

that foreign defendants will get notice." *Harris Corp. v. Nat'l Iranian Radio & Television*, 691 F.2d 1344, 1352 n.16 (11th Cir. 1982).

Because the Court finds that service cannot be made under the Hague Convention, Plaintiff may proceed to complete service as prescribed by paragraph (3) "by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state . . . by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served." *See* 28 U.S.C. § 1608(b)(3).

### III.   RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Plaintiff's Motion, ECF No. [35], should be **GRANTED IN PART AND DENIED IN PART**.  Plaintiff should be permitted to complete service under 28 U.S.C. § 1608(b)(3)(B).

### IV.   OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the United States District Court Judge for the Southern District of Florida, within **FOURTEEN (14) DAYS** of being served with a copy of this Report and Recommendation. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions."  11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on July 7, 2021.

_____
JACQUELINE BECERRA
UNITED STATES MAGISTRATE JUDGE