**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 19-23113-CIV-SCOLA/GOODMAN**

ISAAC INDUSTRIES, INC.,

      Plaintiff,

v.

PETROQUIMICA DE VENEZUELA, S.A.,
et al.,

      Defendants.

_____/

**REPORT AND RECOMMENDATIONS ON**
**PLAINTIFF'S MOTION FOR COURT'S ENTRY OF DEFAULT**

Plaintiff Isaac Industries, Inc. ("Plaintiff" or "Isaac") seeks payment for the delivery of $17,831,772.18 worth of 2-Ethylhexanol.[1] Plaintiff's Motion for the Court's Entry of Default is pending. [ECF No. 60].

After several unsuccessful attempts to deem service of process effectuated and a Clerk's Non-Entry of Default [ECF No. 57], Plaintiff now moves for the entry of a Court-issued default against Petroquimica de Venezuela, S.A., Bariven, S.A, and Petroleos de

---

[1]    Plaintiff has received $2,947,542.00 in payment. [ECF No. 1, ¶ 26]. The Complaint seeks $16,702,732.62 in damages plus interest due when the balance is paid and all costs incurred. [ECF No. 1, ¶¶ 28, 32, 37; pp. 6-8].

Venezuela, S.A. (collectively, "Defendants")[2] [ECF No. 60]. Defendants filed an opposition response and Plaintiff filed a reply. [ECF Nos. 62; 65].

United States District Judge Robert N. Scola, Jr. referred to the Undersigned Plaintiff's Motion for the Court's Entry of Default. [ECF No. 67]. For the reasons stated below, the Undersigned **respectfully recommends** that the District Court **deny** Plaintiff's motion, **dismiss without prejudice** the Complaint, and provide Plaintiff with an opportunity to amend the Complaint to assert subject matter jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1602, et. seq.

## I.      Background

On July 26, 2019, Isaac filed a Complaint against Defendants and PDVSA Services, B.V. ("PSBV"). [ECF No. 1]. The Complaint asserts a claim for breach of a written agreement (Count I) against Petroquimica de Venezuela, S.A. and a claim for breach of contract (Count II) and account stated (Count III) against Bariven, S.A., PSBV, and Petroleos de Venezuela, S.A. *Id.*

Plaintiff's claims stem from its agreement to sell $17,831,772.18 worth of 2-Ethylhexanol to Bariven, S.A., PSBV, and Petroleos de Venezuela, S.A. *Id.* at ¶ 13. The

---

[2]      In this Report and Recommendations, the term "Defendants" does **not** include the fourth defendant, PSBV. On September 1, 2021, the Court granted without prejudice PSBV's motion to dismiss. [ECF No. 59, ¶ 4]. Accordingly, Plaintiff is not seeking the entry of a default against this entity.

Complaint alleges that when these entities failed to remit payment, Petroquimica de Venezuela, S.A. "undertook the obligation to make the payments owed" but made only one payment in the amount of $2,947,542.00. *Id.* at ¶¶ 15, 26.

Because Defendants are located in Venezuela, Plaintiff hired a process server to effectuate service under the Convention on the Service Abroad of Judicial and Extrajudicial Documents ("Hague Service Convention" or "Convention"), 20 U.S.T. 361 (Nov. 15, 1965). On or about August 22, 2019, Plaintiff's process server received the summonses and the Complaint for service on Defendants. *See* Certificates of Due Diligence to Extend the Time to Serve Process Abroad [ECF No. 60-1]. The process server had the documents translated into Spanish. *Id.*

On or about September 6, 2019, Plaintiff's process server forwarded, through a courier service, Requests for Service Abroad of Judicial or Extrajudicial Documents and the translated copies of the summonses and the Complaint to Venezuela's Central Authority. *Id.* On September 10, 2019, Plaintiff's process server received confirmation from the courier service that the documents had been delivered to the Central Authority and had been signed for by Alexis Paredes. *Id.*

According to Plaintiff's process server, upon completion of service on Defendants, the Central Authority mails a certificate of service directly to counsel of record. *Id.* It takes an average of three to four months to complete service and "[t]here is no known means of expediting the process and obtaining a status of the service until a formal

correspondence is sent to counsel of record." *Id.* Plaintiff's process server made several requests for a status update to Venezuela's Central Authority -- the last request was made on June 24, 2021 -- and has not received a response. *Id.*

On May 29, 2020, Plaintiff moved for leave to serve Defendants and PSBV by emailing their counsel of record in unrelated cases in the United States. [ECF No. 9]. Plaintiff's motion cited difficulties completing service abroad, noting that, as of the date of its filing, Plaintiff had not received any information from Venezuela's Central Authority concerning service. *Id.*

Senior United States District Judge James Lawrence King[3] granted Isaac's motion on June 2, 2020, allowing Isaac to serve Defendants and PSBV through their United States counsel. [ECF No. 10].

On June 19, 2020, Defendants' counsel appeared in the case and moved for an extension of time to respond to the Complaint. [ECF Nos. 11-13]. In July 2020, Defendants and PSBV filed motions to dismiss. [ECF Nos. 17; 21]. Defendants asserted, among other things, that service had not been properly effectuated because Defendants were instrumentalities of a foreign state and, as such, must be served pursuant to the FSIA.

---

[3]    Judge King presided over this case until September 21, 2021, when he entered an Order of Recusal. [ECF No. 63]. The case was then reassigned to United States District Judge Robert N. Scola, Jr.

[ECF Nos. 17, p. 9; 21, p. 7].[4] Plaintiff "concede[d] that service of process may only [be] effectuated under 28 U.S.C. [§] 160[8](b)" [ECF No. 31], and the parties submitted an agreed order to the Court.

On August 31, 2020, Judge King issued the Agreed Order. [ECF No. 34]. The Agreed Order granted Defendants' motions to dismiss based on insufficient service of process, but it also provided Plaintiff with an additional 60 days in which to serve Defendants. *Id.*

The Agreed Order stated that: (1) "pursuant to 28 U.S.C. [§] 160[8](b),[5] service of process may only be made upon an agency or instrumentality of a foreign state under one of the three authorized methods of service contained in that Section 160[8](b)"; (2) "[Defendants] assert that they are agencies and instrumentalities of the Bolivarian Republic of Venezuela"; and (3) "Plaintiff concedes that service of process must be completed under Section 160[8](b), which did not occur in this case." *Id.* (footnote added). The Agreed Order further stated that it was "without prejudice to Defendants' ability to

---

[4]     Defendants also argued that the Complaint should be dismissed for lack of subject matter jurisdiction because Defendants are immune from suit as instrumentalities of a foreign state pursuant to the FSIA and the Complaint fails to plead any exception to FSIA immunity. [ECF Nos. 17, pp. 7-8; 21, pp. 5-6].

[5]     The Agreed Order submitted by the parties to Judge King incorrectly cited 28 U.S.C. § 160*5*(b), instead of 28 U.S.C. § 1608(b).

reassert the remaining bases for dismissal contained in their Motions to Dismiss . . . once service of process [was] effectuated." *Id.*

On September 25, 2020, Plaintiff filed a motion to deem service of process effectuated under Article 15 of the Hague Service Convention, or, alternatively, to allow Plaintiff to serve Defendants pursuant to section 1608(b)(3)(B) of the FSIA.[6] [ECF No. 35]. Plaintiff argued that pursuant to Article 15 of the Convention, the Court could deem service of process effectuated because the Central Authority had not confirmed service or responded to Plaintiff's requests for updates in more than a year. *Id.* at 6. In a footnote, Plaintiff explained that it was not seeking the entry of a default because Defendants had made an appearance in the case through counsel. *Id.* at 6, n.1.

Alternatively, Isaac argued that the Court should permit it to serve Defendants by mail pursuant to § 1608(b)(3)(B) because there was no "special arrangement for service between [the parties]" as provided for in § 1608(b)(1) and Isaac had not been able to complete service under the Hague Service Convention pursuant to § 1608(b)(2) (because it had not received the certificates of service from the Central Authority).

Defendants opposed Plaintiff's motion, arguing that Article 15 concerns the entry of default judgments and did not provide a means for effectuating service. [ECF No. 36].

---

[6]     Section 1608(b)(3)(B) permits service of process to be made "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served", in instances where service cannot be made pursuant to sections 1608(b)(1) or (2).

Defendants further argued that Plaintiff's request to serve Defendants pursuant to §
1608(b)(3) should be denied because service by mail on instrumentalities of Venezuela
was not permitted under Venezuelan law and therefore was not permitted under the
Hague Service Convention. *Id.* In short, Defendants took the position that Plaintiff had to
wait until it received the certificates of service from the Central Authority.

Judge King referred to United States Magistrate Judge Jacqueline Becerra Isaac's
motion to deem service of process effectuated or, alternatively, to allow Isaac to serve
Defendants pursuant to § 1608(b)(3)(B). [ECF No. 38]. After a telephonic hearing and
supplemental briefs from the parties, Judge Becerra issued her Report and
Recommendation ("R&R"). [ECF No. 54].

Judge Becerra determined that "Article 15 of the Hague Convention [was]
inapplicable because, in its plain terms, Article 15 only speaks to the issue of default
judgments and Plaintiff [had] not moved for a default against Defendants." *Id.* at 7. She
noted that in each of the cases cited by Plaintiff, the party had moved for a default against
the defendant. *Id.*

Judge Becerra further determined that Plaintiff was permitted to effectuate service
pursuant to § 1608(b)(3) because service under subsection (b)(2) could not be made (i.e.,
service pursuant to the Hague Service Convention). *Id.* at 8. In reaching this conclusion,
Judge Becerra noted that "[b]y any reasonable measure, it appears that service cannot be
made under the Hague Convention" and "[t]o hold otherwise would be to accept

7

Defendants' position that Plaintiff might have to wait in perpetuity for relief." *Id.* at 9. Judge Becerra observed that Plaintiff had not been able to effectuate service in "nearly two years" despite having "taken all the steps necessary under the Hague Convention to effect service . . . ." *Id.*

Thus, Judge Becerra concluded that because service of process could not be made under the Hague Service Convention, "Plaintiff may proceed to complete service as prescribed by . . . [§ 1608(b)(3)] 'by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state . . . by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served.'" *Id.* at 10 (quoting 28 U.S.C. § 1608(b)(3)).

Defendants objected to the R&R. [ECF No. 55]. While Defendants' objections were pending, Plaintiff filed a motion for a clerk's entry of default. [ECF No. 56]. The Clerk of the Court entered a non-default because Defendants had moved for an extension of time to respond to the Complaint and had filed motions to dismiss. [ECF No. 57].

On September 1, 2021, Judge King denied Defendants' objections, affirmed and adopted Judge Becerra's R&R as an Order of this Court, and granted leave for Plaintiff to complete service pursuant to § 1608(b)(3)(B). [ECF No. 59].[7]

---

[7]     Judge King also granted without prejudice PSBV's motion to dismiss.

Two days later, Plaintiff filed the instant Motion, seeking the entry of a default against Defendants pursuant to Article 15 of the Hague Service Convention. [ECF No. 60].

To date, Plaintiff has not filed a notice or otherwise indicated that it has received a certificate of service from the Central Authority.

## II.   Applicable Legal Standards

### A.   FSIA

Defendants are instrumentalities of Venezuela. Service upon an agency or instrumentality of a foreign state is governed by section 1608(b) of the FSIA. *See* Fed. R. Civ. P. 4(j) ("A foreign state or its political subdivision, agency, or instrumentality must be served in accordance with 28 U.S.C. § 1608.").

Section 1608(b) provides that service in the courts of the United States and of the States shall be made upon an agency or instrumentality of a foreign state in the following ways:

> (1) by delivery of a copy of the summons and complaint in accordance with any special arrangement for service between the plaintiff and the agency or instrumentality; or
>
> (2) if no special arrangement exists, by delivery of a copy of the summons and complaint either to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process in the United States; or **in accordance with an applicable international convention on service of judicial documents**; or

9

(3) if service cannot be made under paragraphs (1) or (2), and if reasonably calculated to give actual notice, by delivery of a copy of the summons and complaint, together with a translation of each into the official language of the foreign state—

> (A) as directed by an authority of the foreign state or political subdivision in response to a letter rogatory or request or

> (B) by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the agency or instrumentality to be served, or

> (C) as directed by order of the court consistent with the law of the place where service is to be made.

28 U.S.C. § 1608(b) (emphasis added).

The methods of service in section 1608(b) are listed in order of preference, "such that a plaintiff must attempt the methods of service in the order they are laid out in the statute." *Magness v. Russian Fed'n*, 247 F.3d 609, 613 (5th Cir. 2001).

Section 1608(b)(1) is inapplicable here because there is no special arrangement for service between the parties. The next available method of service is "by delivery of a copy of the summons and complaint . . . in accordance with an applicable international convention on service of judicial documents." 28 U.S.C. § 1608(b)(2). Venezuela and the United States are signatories to the Hague Service Convention.[8] Therefore, in the instant

---

[8]    *See* Status Table, Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Hague Conference on Private International Law, available at https://www.hcch.net/en/instruments/conventions/status-table/?cid=17.

case, the "applicable international convention on service of judicial documents" referenced in section 1608(b)(2) is the Hague Service Convention.

## B.     Hague Service Convention

 "The Hague Service Convention is a multilateral treaty that was formulated in 1964 by the Tenth Session of the Hague Conference of Private International Law" which "revised parts of the Hague Conventions on Civil Procedure of 1905 and 1954." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988). "The primary purpose of the Convention is to provide a simplified way to serve process abroad, to assure that defendants sued in foreign jurisdictions receive actual and timely notice of suit, and to facilitate proof of service abroad." *Marschauser v. Travelers Indem. Co.*, 145 F.R.D. 605, 607 (S.D. Fla. 1992) (citing *Schlunk*, 486 U.S. at 698).

The Convention "requires each state to establish a central authority to receive requests for service of documents from other countries." *Schlunk*, 486 U.S. at 698-99; Hague Service Convention, Art. 2. The requisite documents must be delivered to the Central Authority of the country where the party to be served is located. Hague Service Convention, Art. 3. In instances where the Central Authority receives a request which "does not comply with the provisions of the present Convention[,] it shall promptly inform the applicant and specify its objections to the request." *Id.* at Art. 4. Otherwise, the Central Authority must serve the documents by a method prescribed by its internal laws

or by a method designated by the applicant that is compatible with those laws. *Id.* at Art. 5.

The Central Authority must complete a certificate which either "state[s] that the document has been served and . . . include[s] the method, the place and the date of service and the person to whom the document was delivered" or "set[s] out the reasons which have prevented service." *Id.* at Art. 6. The certificate must be sent directly to the applicant. *Id.*

Article 15 of the Convention permits the entry of default judgments, provided that certain conditions are met. It states that:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, **and the defendant has not appeared**, judgment shall not be given until it is established that -
>
> a) the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory, or
>
> b) the document was actually delivered to the defendant or to his residence by another method provided for by this Convention,
>
> and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.
>
> **Each Contracting State shall be free to declare that the judge, notwithstanding the provisions of the first paragraph of this Article, may give judgment even if no certificate of service or delivery has been received**, if all the following conditions are fulfilled -
>
> a) the document was t**ransmitted by one of the methods provided for in this Convention**,

b) **a period of time of not less than six months**, considered adequate by the judge in the particular case, has elapsed since the date of the transmission of the document,

c) **no certificate of any kind has been received, even though every reasonable effort has been made to obtain it** through the competent authorities of the State addressed.

Notwithstanding the provisions of the preceding paragraphs, the judge may order, in case of urgency, any provisional or protective measures.

*Id.* at Art. 15 (emphasis added).

The United States is one of the signatory countries that has declared, in accordance with the second paragraph of Article 15 that "the judge may, notwithstanding the provisions of the first paragraph of Article 15, give judgment even if no certificate of service or delivery has been received, if all the conditions specified in subdivisions (a), (b) and (c) of the second paragraph of Article 15 are fulfilled."[9]

### C.    Federal Rule of Civil Procedure 55(a)

Federal Rule of Civil Procedure 55(a) states that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "In addition to the clerk, 'a district judge also possesses the inherent

---

[9]    *See* Designations and Declarations Made on the Part of the United States in Connection with the Deposit of the United States Ratification, Declaration No. 3, available at   https://www.hcch.net/en/instruments/conventions/status-table/notifications/?csid=42__8__&disp=resdn.

power to enter a default' under Rule 55(a)." *Allstate Prop. & Cas. Ins. Co. v. Haslup*, No. 2:10-CV-0191-WCO, 2012 WL 12953465, at *6 (N.D. Ga. Jan. 12, 2012) (quoting *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011), aff'd on other grounds, 502 F. App'x 845 (11th Cir. 2012)).[10]

As a threshold matter, the Court must ensure that service of process was properly effectuated. *Chambers v. Halsted Fin. Servs., LLC*, No. 2:13-CV-809-FTM-38, 2014 WL 3721209, at *1 (M.D. Fla. July 28, 2014); *Ballinger v. Top Swords, Inc.*, No. 4:17-CV-0063-HLM, 2018 WL 6137617, at *1 (N.D. Ga. Sept. 11, 2018) ("To determine whether Plaintiff is entitled to an entry of default, the Court must determine whether Plaintiff effected service on Defendant . . . ."). The burden is on the party seeking to obtain a default to establish that service of process has been effectuated. *Bork v. Tran Huong Quynh*, No. 2:19-CV-354-FTM-38-MRM, 2020 WL 6828001, at *2 (M.D. Fla. June 8, 2020).

---

[10]    Although Isaac is moving for a default (and not a default *judgment*), the Undersigned notes that the FSIA contains a specific provision concerning the entry of a default judgment:

> No judgment by default shall be entered by a court of the United States or of a State against a foreign state, a political subdivision thereof, or an agency or instrumentality of a foreign state, unless the claimant establishes his claim or right to relief by evidence satisfactory to the court. A copy of any such default judgment shall be sent to the foreign state or political subdivision in the manner prescribed for service in this section.

28 U.S.C. § 1608(e).

### III.    Analysis

As noted above, Plaintiff's motion for a clerk's entry of default was denied because Defendants had filed a motion for enlargement of time to respond to the Complaint and had filed motions to dismiss. [ECF No. 57]. Additionally, Plaintiff's earlier request to deem service of process effectuated under Article 15 of the Convention was denied because "Article 15 only speaks to the issue of default judgments" and, at the time, "Plaintiff ha[d] not moved for a default against Defendants." [ECF No. 54, p. 7]; [ECF No. 59, p. 3 n.2 ("Defendants correctly point out that Article 15 is limited to provide the minimum requirement for obtaining a default judgment.")]. Instead, the Court granted Plaintiff leave to complete service pursuant to section 1608(b)(3)(B) of the FSIA. [ECF No. 59].

Rather than pursue this alternative method of service, Isaac now asks the Court to enter a default against Defendants pursuant to Article 15 of the Hague Service Convention.

### A.    The Instant Motion is Not a Motion for Reconsideration

At the outset, Defendants argue that Plaintiff's Motion should be denied as an improper motion for reconsideration. They note that Plaintiff raises the same arguments which were considered (and rejected) by Judge Becerra and Judge King.

The Undersigned disagrees with Defendants' characterization of the instant Motion as a motion for reconsideration. Although Defendants are correct that the instant

Motion contains many of the same arguments (and legal authority) presented in Plaintiff's earlier motion to deem service of process effectuated or, in the alternative, to allow service under section 1608(b)(3)(B) [ECF No. 35], the instant Motion contains one important addition: It requests the Court's entry of a default.

Judge Becerra found the fact that Plaintiff had not moved for a default to be determinative. *See* R&R [ECF No. 54, p. 7 ("As a preliminary matter and after careful examination of the authorities cited by the parties, the Court finds Article 15 of the Hague Convention inapplicable because, in its plain terms, Article 15 only speaks to the issue of default judgments and Plaintiff has not moved for a default against Defendants.")]. Accordingly, Plaintiff's Motion is not a motion for reconsideration.

Nonetheless, and for the reasons discussed below, Plaintiff's Motion should be **denied**.

> **B.** **Mere Delivery of the Required Documents to Venezuela's Central Authority is Insufficient to Effectuate Service of Process on Defendants under the Hague Service Convention**

Plaintiff observes that "a number of courts have held that the mere 'delivery' by the plaintiff of the required documents to a foreign state's Central Authority is sufficient to perfect service of process, even in the absence of the return of the certificate of service contemplated by Article 6 of the Hague Convention." [ECF No. 60, p. 12]. However, one of the cases cited by Plaintiff for this proposition was recently reversed on appeal. *See*

16

*Saint-Gobain Performance Plastics Eur. v. Bolivarian Republic of Venezuela*, 23 F.4th 1036 (D.C. Cir. 2022).

The appellate court in *Saint-Gobain* rejected the argument that "when the foreign defendant is a state, requesting service from the Central Authority suffices because the Central Authority *is* the state." *Id.* at 1041 (emphasis added). The circuit court noted that this argument was inconsistent with the text of the Convention which describes the role of the Central Authority as *receiving* requests for service and preserves the Central Authority's right to object to non-compliant requests or requests that infringe on the sovereignty of a state. *Id.* (citing Hague Service Convention, Arts. 2, 4, 13).

The appellate court further noted that treating the Central Authority as the equivalent of the state would render meaningless the provisions of Article 5, which state "that service must be made either by a 'method prescribed by [the receiving state's] internal law,' or by a 'method requested by the applicant, unless . . . incompatible with the law of the [receiving state].'" *Id.* (quoting Art. 5). In other words, the plaintiff could not bypass the available methods of service by simply delivering the documents to the Central Authority and deeming service of process effectuated.

To the extent Plaintiff is arguing that the mere delivery of the required documents to Venezuela's Central Authority constitutes service of process on Defendants because Defendants are instrumentalities of Venezuela, the Court should reject this argument for the same reasons as stated in *Saint-Gobain*. *Id.*

17

**C.    Plaintiff Has Met All of the Requirements of the Second Paragraph of Article 15**

At issue here is Article 15 of the Convention. Article 15 permits the entry of a default judgment when certain conditions are met.

The first paragraph of Article 15 states that:

> Where a writ of summons or an equivalent document had to be transmitted abroad for the purpose of service, under the provisions of the present Convention, **and the defendant has not appeared**, judgment shall not be given until it is established that –
>
> (a) **the document was served by a method prescribed by the internal law of the State** addressed for the service of documents in domestic actions upon persons who are within its territory, or
>
> (b) **the document was actually delivered to the defendant or to his residence by another method provided for by this Convention**,
>
> and that in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend.

Hague Service Convention, Art. 15, ¶ 1 (emphasis added).

Thus, under the first paragraph of Article 15, "[a] default judgment may not be entered unless the plaintiff demonstrates that actual or substituted service was made on the defendant, or that service was effected by a method normally employed by the receiving state in domestic actions against its own residents." *Marschauser*, 145 F.R.D. at 608. "The second full paragraph of Article 15, however, weakens this protection." *Id.* (quoting Bruno A. Ristau, International Judicial Assistance 154 (1990)); *see also Subotich v. Travelers Prop. Cas. Co. of Am.*, No. 15-CV-219-JPS, 2017 WL 2912457, at *3 (E.D. Wis. July

7, 2017) ("Paragraph One prohibits judgment unless a person has been served. Signatories, including the United States, can elect to weaken this requirement by adopting the procedure of Paragraph Two.").

The second paragraph of Article 15 authorizes courts to enter a default judgment, under certain circumstances, if the Central Authority fails to provide a certificate of service after a period of not less than six months. It states that:

> Each contracting State shall be free to declare that the judge, **notwithstanding the provisions of the first paragraph of this article,** may give judgment **even if no certificate of service or delivery has been received**, if all the following conditions are fulfilled –
>
> (a) **the document was transmitted by one of the methods provided for in this Convention**,
>
> (b) **a period of time of not less than six months**, considered adequate by the judge in the particular case, **has elapsed** since the date of the transmission of the document,
>
> (c) **no certificate of any kind has been received**, **even though every reasonable effort has been made to obtain it** through the competent authorities of the State addressed.
>
> Notwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures.

Hague Service Convention, Art. 15, ¶ 2 (emphasis added).

Although the text of Article 15 discusses the entry of a *judgment*, and Plaintiff here is seeking the entry of only a *default*, there is support in the case law for the issuance of a default pursuant to Article 15. *See, e.g., Marschauser*, 145 F.R.D. at 610 (noting that, pursuant to Article 15, the Court was authorized to enter a default but exercising its

discretion and declining to do so because defaults are disfavored and defendants had expressed an intent to contest the lawsuit); *Ballinger v. Top Swords, Inc.*, No. 4:17-CV-0063-HLM, 2018 WL 6137617, at *4 (N.D. Ga. Sept. 11, 2018) (directing clerk to enter a default against defendant who had failed to appear because all three conditions of paragraph two of Article 15 had been met); *Hazim v. Schiel & Denver Book Grp.*, No. CV H-12-1286, 2013 WL 12140300, at *3 (S.D. Tex. Aug. 5, 2013) (granting motion for entry of default where all of the requirements of the first paragraph of Article 15 were met).

Plaintiff is proceeding under the second paragraph of Article 15.[11] This paragraph authorizes the Court to enter a default in instances where a defendant has not entered an appearance, provided that three conditions are met: (1) the documents were transmitted

---

[11]   Plaintiff cannot proceed under the first paragraph of Article 15 because it requires proof of service. *See Saint-Gobain*, 23 F.4th at 1039 ("Paragraph 1 of Article 15 . . . prohibits entry of a default judgment where the foreign defendant 'has not appeared' until the document is served according to the receiving state's internal law or the documents are 'actually delivered . . . by another method provided for by this Convention.'" (quoting Hague Service Convention, Art. 15, ¶ 1)); *Marschauser*, 145 F.R.D. at 608 (under the first paragraph of Article 15, "[a] default judgment may not be entered unless the plaintiff demonstrates that actual or substituted service was made on the defendant, or that service was effected by a method normally employed by the receiving state in domestic actions against its own residents"); *Subotich v. Travelers Prop. Cas. Co. of Am.*, No. 15-CV-219-JPS, 2017 WL 2912457, at *3 (E.D. Wis. July 7, 2017) ("Paragraph One prohibits judgment unless a person has been served.").

In the instant case, Plaintiff has not shown that Defendants were *actually* served with process. Therefore, the first paragraph of Article 15 is inapplicable here. The second paragraph of Article 15, however, permits the entry of a default judgment, *notwithstanding the absence of proof of service*, provided three conditions are met. *See* Hague Service Convention, Art. 15, ¶ 2.

by a method provided for under the Convention; (2) a period of not less than six months

has passed since the documents were transmitted; and (3) no certificate of any kind has

been received, although every reasonable effort was made to obtain it. Hague Service

Convention, Art. 15, ¶ 2.

> Plaintiff recounts its efforts to effectuate service as follows:
>
> As set forth in the affidavit of Plaintiff's process server, Anthony Mhobo, Plaintiff properly delivered the Request for Service Abroad along with the complaint and summons translated into Spanish to the Venezuelan Central Authority in September 2019. *See* Exhibit "A," at ¶ 4. On September 10, 2019, the process server received confirmation that the documents were received by the central authority in Venezuela. *Id.* at ¶ 5. Plaintiff's process server has made multiple attempts to follow up on the status of the service, with the most recent attempt being on June 24, 2021. *Id.* at ¶ 7. However, no response has been provided. *Id.*

[ECF No. 60, p. 8 (citing ECF No. 60-1)]. In her R&R, Judge Becerra noted that "Plaintiff

has taken all the steps necessary under the Hague Convention to effect service and has

not been able to do so despite the fact that the matter has been pending nearly two years."

[ECF No. 54, p. 9]. Moreover, Defendants do not raise any technical missteps in Plaintiff's

efforts to serve Defendants through the Central Authority.

Plaintiff thus asserts that it has met the requirements of Article 15 and, therefore,

an Order of default should be entered against Defendants.

Defendants contend that Article 15 is inapplicable because they have appeared in

this case to contest service of process and Article 15 does not apply to defendants who

have entered an appearance. *See* [ECF No. 62, p. 8 (citing *e360 Insight v. The Spamhaus*

*Project*, 500 F.3d 594, 600 n.4 (7th Cir. 2007) (district court had no affirmative duty to ensure defendant had been properly served under the Hague Service Convention before entering a default because Article 15 did not apply to defendant who had appeared in the case, filed an answer raising improper service of process under the Convention as an affirmative defense and later withdrew that answer (along with the affirmative defense)); *Xyrous Commc'ns, LLC v. Bulgarian Telecommunications Co. AD*, No. CIV.A.1:09-CV-396, 2009 WL 2877084, at *11 (E.D. Va. Sept. 4, 2009) (relying on *e360 Insight* and rejecting the plaintiff's attempt to invoke Article 15 of the Hague Service Convention because it did not apply to defendants who had made an appearance in the action); *Prince v. Gov't of People's Republic of China*, No. 13-CV-2106 (TPG), 2017 WL 4861988, at *6 (S.D.N.Y. Oct. 25, 2017) ("Article 15 sets forth certain conditions that must be met prior to the entry of judgment when a defendant has not appeared—i.e., prior to default judgment.")].

Plaintiff characterizes Defendants' position -- that Article 15 does not apply to defendants who have appeared in the action -- as illogical because, according to Plaintiff, it would undermine the purpose of Article 15 and "create a circumstance where service could be avoided simply through the ministerial act of filing a document that contests its applicability." [ECF No. 65, p. 3].

Plaintiff also cites "Venezuela's documented history of avoiding service of process in the United States by intentionally failing to return the required certificates . . . ." [ECF

No. 65, p. 3]. Although several courts have echoed similar frustrations,[12] the circuit court

in *Saint-Gobain* noted that courts still need to adhere to the text of the Convention:

> To the extent the district courts' rulings may be understood to suggest possible bad faith by [Venezuela] in failing to assure that its Central Authority actually served the Attorney General and notified [the plaintiff] that service had been made, the plain text of the Convention speaks for itself. . . . **[T]he Convention is not silent on the elements of service at issue and nowhere provides that these requirements are inapplicable when the defendant is a sovereign state**. Even when "the equities of a particular case may seem to point in the opposite direction," **the Supreme Court has required courts to adhere to the plain text of the FSIA and the Hague Convention in view of the "sensitive diplomatic implications**."

23 F.4th at 1042 (quoting *Republic of Sudan v. Harrison*, 139 S. Ct. 1048, 1062 (2019))

(emphasis added).

Plaintiff cites two cases where the court considered (or entered) a default under

Article 15, although the defendants had appeared in the case to contest service. [ECF No.

65, pp. 4-5 (citing *Daly v. Llanes*, No. 98 CIV. 1196 (AGS), 1999 WL 1067876 (S.D.N.Y. Nov.

24, 1999); *Marschauser v. Travelers Indem. Co.*, 145 F.R.D. 605 (S.D. Fla. 1992))].

In *Daly*, the plaintiff moved for default judgments against several defendants,

including Banco Progreso, S.A.C.A. ("BPSACA"). 1999 WL 1067876, at *1. BPSACA had

previously entered an appearance in the case to contest service of process (and raise other

---

[12]    *See, e.g.*, *Koch Mins. Sarl v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 34 (D.D.C. 2020) ("Venezuela has a documented history of playing a shell game: circumventing service by refusing to issue a certificate when the party to be served is the same entity that it has designated as its Central Authority."), reconsideration denied *sub nom. Sarl v. Bolivarian Republic of Venezuela*, No. 17-CV-2559-ZMF, 2021 WL 3556565 (D.D.C. Feb. 22, 2021).

objections). In an earlier order, the court determined that the plaintiff had failed to serve BPSACA pursuant to the FSIA. In response to the court's ruling, the plaintiff attempted to serve BPSACA under the Hague Service Convention by delivering documents to Venezuela's Central Authority. BPSACA renewed its motion to dismiss and the district court denied it because the plaintiff had taken reasonable steps to effectuate service and had not yet received the certificate of service from the Central Authority.

After more than nine months had passed and the plaintiff had not received the certificate of service, the plaintiff moved for a default judgment against BPSACA. The court "conclude[d] that BPSACA [could] no longer avoid defending this action on the grounds that plaintiff ha[d] failed to satisfy the requirements of the Hague Service Convention and the FSIA." *Id.* at *2. The court noted that "[the] plaintiff ha[d] taken all steps that he could reasonably be expected to take, and the Hague Service Convention specifically contemplates that judgment may issue in the event that a signatory state's procedures have failed to provide a certificate of service in a timely manner." *Id.* at *1.

The court also noted that BPSACA had actual notice of the action. *Id.* Nonetheless, the court refused to enter a default judgment against BPSACA because it had "defended this action in good faith, and ha[d] requested that the Court permit it to appear in this action in the event that the Court [was] inclined to find it in default." *Id.* at *2.

In *Marschauser*, the plaintiffs sued the State of Israel and the Israeli Consulate General of Miami, Florida following a car accident involving a member of the consulate.

24

145 F.R.D. at 607. The plaintiffs served the defendants by sending the required documents (the Request for Service Abroad, the summons, and the amended complaint) to Israel's Central Authority. Although the plaintiffs received a letter from an administrator of the State of Israel indicating that the plaintiffs' request for service on Israel was not in compliance with Israel's ratification of the Convention, the plaintiffs did not receive a certificate of service from the Central Authority.

The plaintiffs moved for the entry of a default against both defendants. The defendants appeared in the case to contest the motion. This Court determined that because the plaintiffs had met the three requirements of the second paragraph of Article 15 -- (1) the documents were transmitted by a method provided for in the Convention; (2) more than six months had elapsed; and (3) no certificate of any kind was received despite reasonable efforts to obtain it -- it "ha[d] the authority to enter an Order of Default in this matter, notwithstanding that [the plaintiffs] [could not] demonstrate actual proof of service on Israel and the Consulate." *Id.* at 610.

The Court noted that it "ha[d] not found that Israel and the Consulate received actual service of process." *Id.* It "ha[d] only found that Israel's Central Authority failed to serve process or arrange to have it served within six months as is required by the Convention." *Id.*

Although the plaintiffs had met the requirements of the second paragraph of Article 15, this Court declined to enter a default against the defendants. The Court noted

that defaults are disfavored and the defendants had indicated a desire to contest the action if the Court was inclined to enter a default. *Id.* The Court thus provided the defendants with an opportunity to file an answer.

The Undersigned finds that the cases cited by Plaintiff are more closely analogous to the instant case. In both cases, *Daly* and *Marschauser*, the defendants entered appearances before the plaintiffs moved for the entry of default or default judgment. In *Daly*, the defendant entered an appearance to contest service of process *before* the plaintiff attempted service of process under the Hague Service Convention. In both cases, the courts found that the plaintiffs had met the requirements of the second paragraph of Article 15 and would have been entitled to the entry of a default or default judgment but for the equitable considerations in the case.

The Undersigned would be receptive to Defendants' argument that Article 15 is inapplicable because they have appeared in the case if Isaac were moving for a default pursuant to the *first* paragraph of Article 15. The first paragraph of Article 15 makes explicit reference to a defendant's non-appearance. *See* Hague Service Convention, Art. 15, ¶ 1.[13] However, Plaintiff is moving for a default pursuant to the *second* paragraph of Article 15.

---

[13]    The appellate court in *Saint-Gobain*, for instance, noted that Venezuela had appeared in the case:

**In Article 15(1), on which Saint-Gobain relies, is not a basis for obtaining personal jurisdiction here**. Article 15(1) states that "[where] the defendant

Like *Marschauser*, the Undersigned reads the second paragraph of Article 15 as containing three requirements: (1) the documents were transmitted by a method provided for in the Convention; (2) more than six months have elapsed; and (3) no certificate of any kind was received by the plaintiff despite reasonable efforts to obtain it. Hague Service Convention, Art. 15, ¶ 2.

Here, Isaac has met all three requirements and Defendants do not raise any technical deficiencies with the steps taken by Isaac to deliver the documents to the Central Authority. The fact that Defendants entered an appearance in the case, while pertinent to the first paragraph of Article 15, does not change the fact that Isaac has met the three requirements of the second paragraph of Article 15.

Although Plaintiff has met the requirements of the second paragraph of Article 15, the Court should **deny** Plaintiff's motion for default for the reasons discussed below.

---

**has not appeared, judgment shall not be given** until it is established that — (a) the document was served by a method prescribed by the internal law of the State addressed, or (b) the document was actually delivered to the defendant ... by another method provided for by this Convention." **The Republic appeared before both the Delaware district court and the District of Columbia district court to challenge the personal jurisdiction of the courts**. Saint-Gobain has neither completed service in compliance with Venezuelan law, which requires service on the Attorney General, nor identified another method of service under the Convention with which it complied. Therefore, **Saint-Gobain has not satisfied the requirements of either Article 5 or Article 15(1)**.

23 F.4th at 1041 (emphasis added). The second paragraph of Article 15 was not at issue in *Saint-Gobain*. *Id.* (distinguishing cases on ground that they "concern[ed] service under Article 15(2), which [was] not at issue here").

### D.    A Default Against Defendants is Not Warranted Here

The Court should exercise its discretion and deny Plaintiff's request for a default under the circumstances of this case.

At the outset, the Undersigned notes that in many of the cases cited by Plaintiff, the courts declined to enter a default or default judgment even though all of the requirements of Article 15, paragraph two, were met. *See, e.g., Scheck v. Republic of Argentina*, No. 10 CIV. 5167 TPG, 2011 WL 2118795, at *4 (S.D.N.Y. May 23, 2011) (determining that the plaintiff had satisfied the requirements of the second paragraph of Article 15 and, as such the "court [was] entitled to assert jurisdiction over [Argentina]", but finding no basis for the entry of a default judgment); *Marschauser*, 145 F.R.D. at 610 (finding that plaintiff had met the requirements of the second paragraph of Article 15, but denying motion for default); *Daly*, 1999 WL 1067876, at *2 (finding that the defendant could "no longer avoid defending . . . [the] action on the grounds that plaintiff . . . failed to satisfy the requirements of the Hague Service Convention and the FSIA" but declining to enter default judgment).

Additionally, defaults are disfavored and, when possible, cases should be decided on their merits. "As is customary in the Eleventh Circuit, the Defendants should be able to have this matter decided against them, if at all, upon the merits of the case." *Mezerhane v. Republica Bolivariana de Venezuela*, No. 11-23983-CIV, 2013 WL 12091160, at *4 (S.D. Fla. Mar. 19, 2013) (denying the plaintiff's motion for entry of a default judgment).

28

Moreover, the entry of a default against Defendants would be inequitable given the procedural history of this case. Defendants did not wait until Plaintiff moved for a default to enter an appearance in the case. Defendants appeared in the case (for the purpose of contesting service of process and raising other objections) shortly after the Court granted Plaintiff's motion to serve process on Defendants through their United States Counsel in other, unrelated cases. [ECF Nos. 10-12]. Thus, this is not a case where Defendants waited until they had been defaulted or a default judgment had been entered against them to seek relief from the Court.

Defendants filed meritorious motions to dismiss (at least with respect to the issue of improper service) [ECF Nos. 17; 21], and Plaintiff was forced to concede that service of process by emailing Defendants' United States counsel in other cases had been improper. *See* Plaintiffs' Unopposed Motion for Extension of Time to Submit Agreed Order on Defendants' Motions to Dismiss [ECF No. 31, ¶6 ("Based upon the assertion that these Defendants are agencies and instrumentalities of Bolivarian Republic of Venezuela, after reviewing the applicable statute and case law, Plaintiff is obligated to concede that service of process may only [be] effectuated under 28 U.S.C. [§] 160[8](b) and not under Federal Rule of Civil Procedure 4(f)(3).")].

Notably, this Court has <u>twice</u> determined that service of process has not been effectuated on Defendants. [ECF Nos. 34; 59]. "[A] defendant is under no obligation to plead or otherwise defend until and unless it is served with the summons and

complaint." *Lakowitz v. GE Money Bank*, No. 09-23206-CIV, 2011 WL 13220281, at *2 (S.D. Fla. Sept. 9, 2011) (citation and internal quotation marks omitted).

Defendants had no reason to respond to the Complaint based on the Court's two earlier rulings. [ECF Nos. 34; 59]. In fact, the Court's most recent pronouncement on the topic was that Defendants had not been served (and service was not possible) under the Hague Service Convention and, therefore, Plaintiff was permitted to attempt service of process through the next available method of service under the FSIA, section 1608(b)(3)(B). [ECF No. 59, p. 4].

"Where a defendant appears and indicates a desire to contest an action, a court may exercise its discretion to refuse to enter default, in accordance with the policy of allowing cases to be tried on the merits." *Marschauser*, 145 F.R.D. at 610 (quoting *Lee v. Brotherhood of Maintenance of Way Employees*, 139 F.R.D. 376, 381 (D. Minn. 1991)). Given the procedural history in this case and the policy in this Circuit favoring the determination of cases on the merits, the Court should exercise its discretion and **deny** Plaintiff's request for the entry of a default against Defendants.

## E. Plaintiff is Not Entitled to a Default Based on Defendants' Conduct in this Action

Plaintiff also argues that the Court has the authority to enter a default because "Defendants have prevented the case from moving forward after being served pursuant to the Hague Convention." [ECF No. 60, p. 11].

This argument is not well taken. The Undersigned reminds Plaintiff that, to date, this Court has not determined that service of process has been effectuated on Defendants. Thus, Defendants were under no obligation to respond to the Complaint. [ECF Nos. 34; 59].

Plaintiff cites *Jackson v. Innovative Sec. Servs., LLC*, 283 F.R.D. 13 (D.D.C. 2012). In *Jackson*, the district court entered a default judgment against a defendant who had "failed to file a responsive pleading to [the] [p]laintiffs' complaint for nearly nineteen months", "failed to respond to the court's request for status reports", and had "left his last known address and [was] currently unreachable." *Id.* at 16.

The instant case is a far cry from *Jackson* where the defendant, through his inactions, "ha[d] halted the adversarial process and impeded an efficient resolution of [the] [p]laintiffs' claims." *Id.* Here, Defendants have participated in the litigation process by filing motions to dismiss, appearing at a telephonic hearing before Judge Becerra, filing a supplemental brief, objecting to Judge Becerra's R&R, and responding to the instant Motion. Although Plaintiff is correct that Defendants have not addressed the merits of Plaintiff's claims, Defendants are well within their rights to challenge service of process. In fact, Defendants' motions to dismiss were meritorious (at least with respect to the issue of service) and Plaintiff was forced to concede that it had not properly served Defendants under the FSIA.

"While it is preferred that a party engage the litigation process by making an appearance for the limited purpose of challenging the court's jurisdiction, [a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Baragona v. Kuwait & Gulf Link Transp. Co.*, 691 F. Supp. 2d 1351, 1360 (N.D. Ga. 2009), aff'd sub nom. *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852 (11th Cir. 2010). Here, Defendants have chosen the preferred course of action by engaging in the litigation process and challenging service of process. A default, based on Defendants' actions in this case, is not warranted.

**F.**   **The Complaint Should Be Dismissed Without Prejudice and Plaintiff Should be Provided with an Opportunity to Amend the Complaint to Allege Subject Matter Jurisdiction under the FSIA**[14]

Federal courts are courts of limited subject matter jurisdiction and must be vigilant in ensuring that they have jurisdiction over a case. "[B]ecause a federal court is powerless

---

[14]   The Undersigned is raising the issue of subject matter jurisdiction under the FSIA, at this juncture, *sua sponte*. Defendants initially raised this argument in their motions to dismiss. *See* Motions to Dismiss [ECF Nos. 17, pp. 7-8; 21, pp. 5-6]. Defendants' motions to dismiss were terminated as pending motions when Judge King issued the Agreed Order [ECF No. 34]. The Agreed Order preserved Defendants' ability to reassert this argument. *Id.* (stating that Order was "without prejudice to Defendants' ability to reassert the remaining bases for dismissal contained in their Motions to Dismiss . . . once service of process [was] effectuated"). In the interest of judicial economy, the Court should require Plaintiff to plead subject matter jurisdiction under the FSIA and the applicable exception(s) to foreign sovereign immunity in an amended complaint rather than wait for Defendants to reassert this argument in a renewed motion to dismiss.

to act beyond its statutory grant of subject matter jurisdiction, a court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises." *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001). "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010); *Univ. of S. Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999) ("Indeed, it is well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking.").

Moreover, the Court always has jurisdiction to determine whether it has jurisdiction over a matter. *United States v. Ruiz*, 536 U.S. 622, 628 (2002) ("[I]t is familiar law that a federal court always has jurisdiction to determine its own jurisdiction.").

Plaintiff's Complaint alleges diversity jurisdiction, 28 U.S.C. § 1332, as the basis for subject matter jurisdiction in this case. [ECF No. 1, ¶ 7]. However, Defendants are instrumentalities of Venezuela. "In actions against foreign sovereigns or their instrumentalities, the FSIA provides the sole basis for obtaining subject matter jurisdiction in United States courts." *Bahgat v. Arab Republic of Egypt*, No. 13CIV8894ATAJP, 2015 WL 13654006, at *4 (S.D.N.Y. Mar. 31, 2015), aff'd, 631 F. App'x 69 (2d Cir. 2016). Nowhere in the Complaint does Plaintiff even mention the FSIA.

The Complaint in the instant case fails to plead the FSIA as the Court's basis for subject matter jurisdiction and fails to specifically invoke any of the FSIA's exceptions to foreign sovereign immunity. The FSIA provides that foreign states, and their agencies or instrumentalities, are immune from the jurisdiction of United States courts, unless an exception applies. 28 U.S.C. §§ 1604, 1605. "These exceptions are central to the Act's functioning: 'At the threshold of every action in a district court against a foreign state, . . . the court must satisfy itself that one of the exceptions applies,' as 'subject-matter jurisdiction in any such action depends' on that application." *Republic of Austria v. Altmann*, 541 U.S. 677, 691 (2004) (quoting *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 493-94 (1983)).

Once Defendants filed their motions to dismiss alerting Plaintiff to the fact that it had not properly served Defendants pursuant to the FSIA (which Plaintiff promptly conceded), the appropriate course of action would have been for Plaintiff to file an amended complaint alleging that the FSIA provides the Court with subject matter jurisdiction over this action because an exception to foreign sovereign immunity applies. Because Plaintiff failed to allege in the Complaint a basis for the Court's subject matter jurisdiction over this action, Plaintiff's Complaint must be dismissed without prejudice.

The Undersigned **respectfully recommends** that the Court **dismiss without prejudice** the Complaint and provide Plaintiff with an opportunity to file an amended complaint which alleges subject matter jurisdiction under the FSIA. *See Sch. Bd. of Lee Cty.*

*v. M.P.*, No. 2:15-CV-730-FTM-99-MRM, 2016 WL 6406218, at *4 (M.D. Fla. Oct. 31, 2016) (providing plaintiff with leave to amend the complaint to assert a basis for subject matter jurisdiction).

Once Plaintiff files an amended complaint, then Defendants should be permitted to either file an answer or file renewed motions to dismiss. Defendants should not, however, be permitted to challenge service of process since Plaintiff has met the requirements of Article 15, paragraph two.

**IV.    Conclusion**

For the reasons stated above, the Undersigned **respectfully recommends** that Plaintiff's motion for entry of a default be **denied**. The Complaint should be **dismissed without prejudice** for lack of subject matter jurisdiction and Plaintiff should be provided with an opportunity to file an amended complaint asserting subject matter jurisdiction under the FSIA and plead an exception (or exceptions) to foreign sovereign immunity. Once Plaintiff has filed an amended complaint, Defendants should be permitted to file an answer or move to dismiss. However, Defendants should be prohibited from re-asserting a challenge to service of process because Plaintiff has met the requirements of Article 15, paragraph two, of the Hague Service Convention.

**V.    Objections**

The parties will have fourteen days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the

United States District Judge. Each party may file a response to the other party's objection within fourteen days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

  **RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on March 1, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

<u>**Copies furnished to**</u>:
The Honorable Robert N. Scola
All Counsel of Record