United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Isaac Industries, Inc., Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-23113-Civ-Scola |
| | ) |
| Petroquimica de Venezuela, S.A. | ) |
| and others, Defendants. | ) |

### Order Granting in Part and Denying in Part Motion to Dismiss

Plaintiff Isaac Industries, Inc., a wholesale distributor of various chemicals, seeks to recover over $17 million from Defendants Petroquimica de Venezuela, S.A. ("Pequiven"), Bariven, S.A. ("Bariven"), and Petroleos De Venezuela, S.A. ("PDVSA") for amounts owed in connection with three large shipments of 2-Ethylhexanol Isaac sent to Bariven in 2014. (Am. Compl. ("complaint" or "Compl."), ECF No. 71.) Isaac sets forth three counts in its complaint: two counts for breach of contract (one against Pequiven (count one) and one against both PDVSA and Bariven, together (count two)); and one count for account stated, also against both PDVSA and Bariven (count three). (*Id.*) Defendants Pequiven and PDVSA have jointly filed a motion to dismiss, arguing (1) the Court lacks jurisdiction over PDVSA because it is immune from suit under the FSIA; (2) even if the Court did have jurisdiction over PDVSA, Isaac has failed to a state claim against PDVSA for either breach of contract or account stated; and (3) Isaac has failed to state a claim against Pequiven for breach of contract. (Defs.' Mot., ECF No. 75.) Isaac has responded (ECF No. 76) and Pequiven and PDVSA have jointly replied (ECF No. 77). After review, the Court agrees that PDVSA is immune from suit under the FSIA, and therefore does not decide whether the complaint states a claim against PDVSA, but finds the Defendants' arguments as to the claim against Pequiven unavailing. Accordingly, the Court **grants in part and denies in part** Pequiven and PDVSA's motion to dismiss (**ECF No. 75**).

1. **Background**[1]

Isaac is a Florida corporation that engages in the wholesale distribution of chemicals. The Defendants are Venezuelan companies. Pequiven operates as a

---

[1] This background is based on the allegations the Plaintiff presents in its complaint. For the purposes of evaluating the Defendants' motion, the Court accepts the Plaintiff's factual allegations as true and construes the allegations in the light most favorable to it per Federal Rule of Civil Procedure 12(b)(6).

petrochemical company, engaged in the production and sale of petrochemical products, including fertilizers, industrial chemical products, olefins, and plastic resins. (Compl. ¶ 3.) PDVSA is a Venezuelan state-owned and state-controlled oil company. (*Id.* ¶ 4.) Bariven is a wholly owned subsidiary of PDVSA, primarily engaged in acquiring equipment and machinery used in the oil exploration and extraction processes of PDVSA. (*Id.* ¶ 5.)

Isaac says that, in 2014, it contracted to sell both Bariven and PDVSA, together, $17,831,722.18 worth of 2-Ethylhexanol. (*Id.* ¶ 9.) In support of this allegation, Isaac attaches three invoices to its complaint, describing three different shipments of the chemical from Rotterdam to Venezuela. (Ex. A, ECF No. 71, 10.) Each invoice identifies the entity being "SOLD TO" as "BARIVEN, S.A. C/O PDVSA SERVICES, B.V." (Ex. A at 10–12.) The "CONSIGNEE/NOTIFY PARTY" is identified as "BARIVEN, S.A./PETROQUIMA [*sic*] DE VENEZUELA, S.A." on the first two invoices and "BARIVEN, S.A./PEQUIVEN S.A." on the third. (*Id.*) Each invoice is for almost $6 million, with payment due to Isaac in September 2014 for the first two invoices and November 2014 for the third. (*E.g.*, Compl. ¶ 9.) Although all $17,831,772.18 worth of the organic compound was shipped and delivered, none of the invoices were paid when they became due. (*Id.* ¶¶ 10, 26.)

Isaac says that, because of Bariven and PDVSA's default, Pequiven's manager of planning and market intelligence requested a meeting with Isaac, in Miami, Florida, in September 2016. (*Id.* ¶ 12.) As a result of this meeting, Pequiven agreed to pay Isaac $17,831,722.18 in exchange for Isaac's release of any debt owed by Bariven and PDVSA. (*Id.* ¶ 13.) Isaac says the release was wholly contingent upon full payment by Pequiven and, barring that full payment, Bariven and PDVSA would remain responsible for the outstanding balance. (*Id.*) Isaac attached a memorialization of the agreement between Isaac and Pequiven as exhibit B to its complaint. (Ex. B, ECF No. 71, 13–15.) Under that agreement, Pequiven was required to make a series of payments, each about $3 million, beginning on December 31, 2016, and continuing, quarterly, through June 30, 2018. (Compl. ¶ 14.) Pequiven timely submitted the first payment, of $2,947,541.93, but then failed to tender any payments thereafter. (*Id.* ¶¶ 15–6.) Neither Bariven nor PDVSA has made any payments either. (*Id.* ¶ 17.) Notably, while PDVSA Services, B.V., is mentioned in the Pequiven agreement, PDVSA, the Defendant here, is not.

In count one, Isaac says Pequiven breached its agreement to pay Isaac all the amounts due, plus interest, that are owed by Bariven and PDVSA. (*Id.* ¶¶ 18–24.) In count two, Isaac seeks to recover the amounts due directly from Bariven and PDVSA. (*Id.* ¶¶ 25–7.) Lastly, through count three, Isaac seeks an account stated against Bariven and PDVSA. (*Id.* ¶¶ 28–31.) Pequiven and PDVSA

have jointly filed a motion to dismiss. They say that Isaac has failed to state a claim for breach of contract against either Pequiven or PDVSA or for account stated against PDVSA and, further, that PDVSA is immune from suit under the Foreign Sovereign Immunities Act. (Defs.' Mot. at 1.)

## 2. Legal Standard

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (cleaned up). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up).

### 3. Discussion

**A. PDVSA is immune from suit under the FSIA.**

To begin with, the Defendants argue PDVSA is immune from suit under the FSIA and that Isaac is unable to establish that PDVSA falls within one of the exceptions to immunity delineated by the FSIA. (Defs.' Mot. at 4.) Isaac, in response, maintains it has presented ample allegations in its complaint that demonstrate the application of the commercial activity exception to the FSIA. (Pl.'s Resp. at 2.) After review, the Court agrees with the Defendants that Isaac has failed to establish that PDVSA is not immune from suit.

Under the FSIA, foreign states and their agencies and instrumentalities have immunity from suit, except as provided in §§ 1605 to 1607 or under applicable international agreement. 28 U.S.C. § 1604. "[T]he FSIA starts from a premise of immunity and then creates exceptions to the general principle." *Bolivarian Republic of Venezuela v. Helmerich & Payne Intern. Drilling Co.*, 137 S. Ct. 1312, 1320 (May 1, 2017) (cleaned up). "Thus, in order to establish subject matter jurisdiction under the FSIA, the plaintiff must overcome the presumption that the foreign state is immune from suit by producing evidence that the conduct which forms the basis of the complaint falls within one of the statutorily defined exceptions." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1312–13 (11th Cir. 2009) (cleaned up). One of those exceptions, which Isaac relies on here, is the commercial-activity exception. Under this exception, a foreign state is not immune from the jurisdictions of the courts of the United States in any action in which the case is based (1) "upon a commercial activity carried on in the United States by the foreign state"; (2) "upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere"; (3) or "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). Determining whether a plaintiff has met its burden, of establishing the applicability of an exception, "involves a review of the allegations in the complaint, the undisputed facts, if any, placed before the court by the parties, and—if the plaintiff comes forward with sufficient evidence to carry its burden of production on this issue— resolution of disputed issues of fact." *In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 80 (2d Cir. 2008), *abrogated by Samantar v. Yousuf on other grounds*, 560 U.S. 305 (2010).

Because the parties do not dispute that PDVSA, during the relevant period, was an agent and instrumentality of Venezuela, the Court has no occasion to pass on the issue of whether PDVSA was thus a "foreign sovereign" under the FSIA and therefore presumptively immune from this suit. (Compl. ¶ 4;

Defs.' Mot. at 4 ("The plaintiff freely admits that [the Defendants] are instrumentalities of the Bolivarian Republic of Venezuela, a foreign state.").) The burden thus falls to Isaac to establish the applicability of an exception. In arguing it has satisfied its burden, Isaac relies on its complaint, pointing to its allegations that "(i) the Defendants' decision to withhold [the identified] payments took place outside of the United States; (ii) that act was taken in connection with a commercial activity; and (iii) the failure to pay had a direct effect in the United States." (Pl.'s Resp. at 2–3 (quoting Compl. ¶ 7).) While the Court agrees that Isaac has sufficiently alleged these three factors with respect to Pequiven and Bariven, Isaac fails to show how these allegations apply to PDVSA. Instead, the complaint supplies facts showing only that (i) *Pequiven and Bariven* decided to withhold the payments due, outside the United States; (ii) this act was taken in connection with a commercial activity—that activity being the purchase of chemical products from the open market, like any other consumer; and (iii) *Pequiven and Bariven's* failure to pay has had a direct effect in the United States, where Isaac is incorporated and where the payments were due to be paid.

In insisting it has alleged facts in its complaint, supporting application of the commercial-activity exception, Isaac points to its contention "that it had a contract with PDVSA." (Pl.'s Resp. at 6 (citing Compl. ¶¶ 9, 26).) But this is not a factual allegation: it amounts to nothing more than a bare conclusion, unsupported by factual allegations. *See Butler*, 579 F.3d at 1313–14 (noting that "where defendant asserts a facial attack on the subject-matter jurisdiction alleged in the complaint, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss") (cleaned up). Moreover, the three invoices Isaac attaches to its complaint actually contradict Isaac's conclusory allegations about contracting with PDVSA: the invoices show that Isaac's contract, for the purchase and sale of the chemical shipments, was with Bariven alone, with non-party "PDVSA Services, B.V." listed as some sort of agent—"C/O"—for Bariven.[2] Accordingly, the Court finds the specifics identified in the invoice directly refute Isaac's vague contention that it had a contract with PDVSA. *See Gill as Next Friend of K.C.R. v. Judd*, 941 F.3d 504, 514 (11th Cir. 2019) ("[W]hen exhibits attached to a complaint contradict the general and conclusory allegations of the pleading, the exhibits govern.") (cleaned up).

---

[2] Isaac had included PDVSA Services, B.V., in its initial complaint, describing it as "a foreign entity located in . . . the Netherlands" which "acts as the purchasing agent for [Bariven]." (1st Compl. ¶ 6, ECF No. 1.) Notably, Isaac did not include allegations relevant to this entity in its amended complaint.

In attempting to mitigate its complaint's deficiencies, Isaac points to a "PAYMENT" provision in two of three invoices. (Pl.'s Resp. at 6.) This payment provision, in the two July 2014 invoices, provides that, sixty days after the "discharge date," the "buyer will issue 'parent performance guarantee' to seller for the value of the shipment." (Ex. A at 10–11.) At the same time, Isaac draws attention to an allegation in its complaint that asserts that Bariven is "the wholly owned subsidiary of . . . PDVSA." (Pl.'s Resp. at 6 (citing Compl. ¶ 5).) Isaac insists that, together, this provision and allegation show that (1) "PDVSA was providing a 'Parent Performance Guarantee,' making PDVSA directly liable for the full amount due" and (2) Isaac has met its burden of establishing the applicability of the commercial-activity exception to PDVSA's immunity. The Court finds neither contention compelling. First, there is no indication anywhere in the complaint, or even in Isaac's response, indicating that Bariven ever issued the required guarantee or that PDVSA ever even agreed to it. Without any viable allegations or other factual support establishing that PDVSA ever even entered into an agreement with Isaac, never mind that PDVSA thereafter breached that agreement, Isaac is unable to establish that the commercial-activity exception applies to PDVSA.[3] Accordingly, the Court agrees with the Defendants that PDVSA, as an agent and instrumentality of Venezuela, is immune from suit in this case.

### B. The Defendants have not shown that Isaac failed to state a claim against Pequiven.

Next, the Defendants argue that the breach-of-contract claim against Pequiven fails because Isaac does not allege that Pequiven received any consideration or value for its assumption of Bariven's debt. The Defendants miss the mark.

First, a plaintiff need not plead consideration in order to state a claim for breach of contract. Instead, "[t]o prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017). Second, lack of consideration is an affirmative defense. Fed. R. Civ. P. 8(c)(1). And, "[g]enerally, the existence of an affirmative defense will not

---

[3] To the extent Isaac sought to hold PDVSA liable as the alter ego of Bariven, its efforts miss the mark. In order to pierce Bariven's corporate veil, Isaac would have to show that (1) PDVSA "dominated and controlled" Bariven to such an extent that its "independent existence, was in fact non-existent"; (2) that Bariven's "corporate form must have been used fraudulently or for an improper purpose"; and (3) "the fraudulent or improper use of the corporate form" is what caused Isaac's injury. *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008). Isaac has not alleged any of these factors.

support a motion to dismiss." *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984), *on reh'g,* 764 F.2d 1400 (11th Cir. 1985). Considering an affirmative defense in the motion-to-dismiss context is ordinarily only appropriate where the complaint's "own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint." *Id.* Because the Defendants point merely to the absence of any allegations in the complaint, as to consideration, their motion fails.

### 4. Conclusion

As set forth above, the Court **grants in part and denies in part** the Defendants' motion to dismiss (**ECF No. 75**). The Court dismisses the claims, in counts two and three, against PDVSA, without prejudice, for lack of a jurisdiction under the FSIA. All other claims will move forward: count one against Pequiven; and counts two and three against Bariven. The Court orders Pequiven to file its answer to the amended complaint on or before **October 4, 2022**.

**Done and ordered**, in Miami, Florida, on September 27, 2022.

Robert N. Scola, Jr.
United States District Judge