UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 19-CV-23113-SCOLA/GOODMAN

ISAAC INDUSTRIES, INC.,

      Plaintiff,

v.

PETROQUIMICA DE VENEZUELA, S.A.,
et al.,

      Defendants.

_____/

*"For every complex problem there is an answer that is clear, simple, and **wrong**."*

-   H.L. Mencken (American journalist, writer, and satirist, 1880 – 1956)

*"'Anything' Is **<u>Not</u>** Possible – And That's OK."*

-   Andre Averburg (writer, economist, and entrepreneur)

**ORDER ON PLAINTIFF'S REQUEST
<u>TO COMPEL BETTER RESPONSES TO DISCOVERY</u>**

What happens in a federal civil lawsuit when a party is unable to provide

discovery responses because that party is a foreign government-operated entity and the

government itself has been replaced by a regime deemed renegade by the United States

and the entity's United States attorneys cannot even communicate with the renegade officials who hold power (and control the documents and information needed in discovery)? The answer provided here arises from an old English proverb: "You can't get blood out of a stone."

For reasons outlined in greater detail below, the Undersigned will not impose sanctions against Defendants for not providing substantive discovery responses, but I will permit Plaintiff to pursue a Rule 30(b)(6) deposition to inquire about the steps which Defendant took to coordinate with the Venezuelan government (which the United States does not recognize) and, if no steps were taken, why not, and what alternatives, if any, are available?

This discovery dispute began (at least for the Undersigned) on October 20, 2022, when the Undersigned held a Zoom videoconference hearing on the parties' discovery disputes. [ECF Nos. 85; 90-91].

At the hearing, Petroquimica de Venezuela, S.A. ("Pequiven") and Bariven, S.A. ("Bariven") (collectively, "Defendants") took the position that they cannot substantively respond to requests for admission, substantively provide information in interrogatory answers, or produce non-privileged responsive documents because they do not have the ability to obtain that information and those materials from the Maduro regime, which they believe to be illegitimate. Isaac Industries, Inc. ("Isaac" or "Plaintiff") argued that Venezuela's political troubles did not relieve Defendants of their obligations under the

Federal Rules of Civil Procedure to provide substantive discovery responses and documents.

The Undersigned issued a Post-Discovery Hearing Administrative Order permitting the parties to file legal memoranda and supporting information or documents. [ECF No. 92]. The parties each filed a memorandum of law in support of their respective position and Defendants filed an optional reply. [ECF Nos. 93-95].

Defendants also filed the declarations of Horacio Francisco Medina Herrera ("Medina"), a petroleum engineer who currently serves as the President of the Ad-Hoc Management Board of Petroleos de Venezuela S.A. ("PDVSA Ad-Hoc Board"), and Diana Cecilia Bracho Bertomeu ("Bracho"), an attorney licensed to practice law in Venezuela who currently serves as the President of the Ad-Hoc Management Board of Petroquimica de Venezuela, S.A. ("Pequiven Ad-Hoc Board"). [ECF Nos. 93-1; 93-2].

## I.    Background[1]

The Amended Complaint alleges a breach of contract claim (Count I) against Pequiven, a breach of contract claim (Count II) against both Bariven and Petroleos de Venezuela, S.A. ("PDVSA"), and an account stated claim (Count III) against Bariven and PDVSA. [ECF No. 71, ¶¶ 18-31]. United States District Judge Robert N. Scola, Jr.

---

[1]    The Undersigned includes a recitation of the facts, as alleged in the Amended Complaint [ECF No. 71], to provide context to the discovery rulings. The Undersigned makes no factual findings in this Order.

dismissed without prejudice the claims against PDVSA for lack of jurisdiction under the Foreign Sovereign Immunities Act. [ECF No. 81].

The Amended Complaint alleges that Isaac is a Florida corporation that "engages in the wholesale distribution of chemicals and allied products." [ECF No. 71, ¶¶ 1-2]. Defendants are Venezuelan companies. Pequiven "operates as a petrochemical company engaged in the production and sale of petrochemical products which includes fertilizers, industrial chemical products, olefins, and plastic resins." *Id.* at ¶ 3. PDVSA is a Venezuelan state-owned and state-controlled oil company. *Id.* at ¶ 4. Bariven is a wholly owned subsidiary of PDVSA "and is primarily engaged in [the] acquisition of equipment and machinery used in the oil exploration and extraction processes of PDVSA." *Id.* at ¶ 5.

Isaac alleges that in 2014, it contracted to sell to both Bariven and PDVSA a total of $17,831,722.18 worth of the organic compound 2-Ethylhexanol. *Id.* at ¶ 9. Isaac attaches three invoices to the Amended Complaint which total this amount. *Id.* at pp. 10-12. The invoices were not paid when they became due. *Id.* at ¶¶ 10, 27.

According to Plaintiff, Pequiven's manager of planning and market intelligence requested a meeting with Isaac, in Miami, Florida, on September 24, 2016, due to Bariven and PDVSA's default. *Id.* at ¶ 12. Following this meeting, Isaac and Pequiven entered into a written agreement wherein Pequiven would pay Isaac $17,831,722.18 in exchange for Isaac's release of any debt owed by Bariven and PDVSA. *Id.* at ¶ 13. A copy of this

purported agreement is attached to the Amended Complaint as Exhibit B. *Id.* at pp. 13-15. According to Isaac, the release was wholly contingent upon full payment by Pequiven and, barring that full payment, Bariven and PDVSA would remain responsible for the outstanding amount. *Id.* at ¶ 13.

Under the agreement, Pequiven was required to make a total of seven payments in various amounts, beginning on December 31, 2016, and continuing, quarterly, through June 30, 2018. *Id.* at ¶ 14. Pequiven made only the first payment. *Id.* at ¶¶ 15-16. Bariven and PDVSA have not made any payments. *Id.* at ¶ 17.

## II.     The Parties' Arguments

Plaintiff propounded requests for admission, interrogatories, and requests for production. [ECF Nos. 93-3; 93-4]. It also sought to schedule Rule 30(b)(6) depositions and provided Defendants with deposition topics. [ECF No. 93-5, pp. 3-6]. Defendants have responded to Plaintiff's written discovery by asserting objections (including boilerplate objections), making preliminary statements about the Venezuelan presidential crisis, and stating they are without knowledge or unable to provide the responsive documents. [ECF Nos. 93-6; 93-7]. Plaintiff now seeks to compel better discovery responses from Defendants.

### A.     Defendants' Memorandum

Defendants contend that they have "participated in the discovery process in good faith and are simply unable to provide" the discovery Plaintiff seeks. [ECF No. 93, p. 1].

They state that "there is little more that can be done, given that the only administration permitted by the United States to represent these Defendants in this Court is simply unable to access the requested information or provide any defense other than what can be mounted through the public record." *Id.*

Defendants rely primarily on United States Magistrate Judge Chris M. McAliley's Order in *Comparelli v. Bolivarian Republic of Venezuela*, No. 14-24414-CIV, 2021 WL 3550718 (S.D. Fla. Aug. 10, 2021).[2] *See* Section IV(A), *infra*. They state that "as in *Comparelli*, [they] have in good faith done all they can to respond properly to . . . [P]laintiff's requests" and "without access to the relevant documents, information, or personnel under the control of the Maduro regime . . .[,] Defendants are unable to provide additional information through the discovery process." [ECF No. 93, pp. 12-13].

Defendants propose Plaintiff "proceed to prove its case, if possible, with the information it has available." *Id.* at 1. Defendants acknowledge that if Plaintiff were to "move forward with the evidence it has at its disposal" and seek a judgment, then "[they] [would] largely [be] hamstrung from presenting conflicting evidence[.]" *Id.* at 13.

Alternatively, Defendants state they would not object to a stay of "these proceedings until such time as the Venezuelan presidential crisis is resolved and the U.S. recognizes a subsequent government with the actual ability to provide further

---

[2]     The same law firm (and some of the same attorneys) representing the defendants in *Comparelli* are representing Defendants in this case.

information." *Id.* As discussed below, Plaintiff objects to the issuance of a stay and disputes whether Defendants have participated in the discovery process in good faith.

**B.      Plaintiff's Memorandum**

Plaintiff seeks better responses to its requests for admission, interrogatories, and requests for production. Plaintiff notes that in Defendants' responses to this discovery, they include "a 'preliminary statement' detailing Venezuela's political issues" and "[a]ll of the individual requests were responded to 'subject to' this preliminary statement." [ECF No. 94, p. 3].

Plaintiff first addresses Defendants' responses to the requests for admission. It notes that "Defendants are denying the requests for admission based on a purported lack of knowledge without making a reasonable inquiry" and "[t]he political situation in Venezuela does not obviate . . . Defendants' obligation to comply with Rule 36." [ECF No. 94, pp. 4-5]. Plaintiff notes that "Defendants cannot even bring themselves to make a reasonable inquiry because to do so would, in their eyes, 'recognize the legitimacy of the usurper regime of Nicolas Maduro' and 'lend credibility to or validate the regime.'" *Id.* at 5.

Next, Plaintiff addresses Defendants' responses to its interrogatories. It argues that as to Interrogatory No. 2, "Bariven cannot object on the basis of foundation if it is without knowledge of whether it failed to pay Plaintiff the nearly $18 million allegedly owed and if it does not intend to provide *any* meaningful response or *any* responsive documents

whatsoever." *Id.* (emphasis in original). As to Interrogatory No. 3, Plaintiff notes that it attached a contract and invoices to the Amended Complaint and "it is improper for Defendants to use the Venezuelan political crisis as an excuse for their own refusal to play by the Rules." *Id.* Plaintiff asks the Court to "require . . . Defendants to amend their answers to say so in simple, straightforward language" without being subject to any preliminary statements. *Id.* at 6.

Lastly, Plaintiff discusses Defendants' responses to the requests for production. It notes that these responses include a two-page preliminary statement and general objections, which are prohibited by the Discovery Procedures Order [ECF No. 68] in this case. *Id.* Plaintiff argues that Defendants' conclusory and boilerplate objections should be overruled, state that "the 'subject to [the preliminary statement]' language should be deemed improper," and note that "Defendants have not even *requested* a single document from the de facto government, much less produced *any documents* to Plaintiff." *Id.* at 6-7 (emphasis in original).

Finally, Plaintiff objects to the entry of a stay, noting that it has not asked for a stay and the case was "effectively 'stayed'" for approximately two years because Venezuela would not acknowledge service of process. *Id.* at 8.

### C.    Defendants' Reply

In their Reply, Defendants contend that requiring them to amend their discovery responses would serve no purpose. [ECF No. 95, p. 6 ("Rewriting the responses to say,

once more, what Defendants have long made known—that they are unable to produce the information plaintiff seeks—would be a waste of judicial resources. . . . [S]uch amendments would have no material effect on the outcome here; Defendants will still have no documents or information to offer in this case.")].

Defendants dispute Plaintiff's contention that they have failed to make reasonable inquiries before responding to Plaintiff's discovery. They state that "the **only** inquiries Defendants can make under these circumstances are those directed to Defendants' respective Ad-Hoc Boards, boards created by the Guaidó government and the democratically elected National Assembly—the only Venezuelan authorities the United States recognizes as legitimate." *Id.* at 3 (emphasis in original). Defendants state that they "can do no more during the ongoing presidential crisis to obtain the information . . . [P]laintiff seeks." *Id.*

Defendants maintain that "contacting the Maduro regime would be politically impossible" *Id.* They believe the "Maduro regime would use any requests by Defendants for their own political purposes" and note that PDVSA and Pequiven Ad-Hoc board members cannot safely return to Venezuela and would face imminent arrest. *Id.*

Defendants also point out that they have been forthright "in filings, in communications with opposing counsel, and before this Court" about the discovery challenges they face in this case. *Id.* at 6 ("Defendants explained early in the discovery

process that they 'expect considerable difficulty in procuring and disclosing relevant information.'" (citing [ECF No. 78, p. 4 (Joint Discovery Plan and Conference Report)]]).

### III.    Applicable Legal Standard

Federal Rule of Civil Procedure 26(b)(1) allows discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "The discovery process is designed to fully inform the parties of the relevant facts involved in their case." *United States v. Pepper's Steel & Alloys, Inc.*, 132 F.R.D. 695, 698 (S.D. Fla. 1990) (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)).

To that end, "[t]he Supreme Court has stressed on multiple occasions the need to construe the [Federal] Rules liberally to allow for robust discovery." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276 (11th Cir. 2021) (collecting cases); *see also Off. Depot, Inc. v. Elementum Ltd.*, No. 9:19-CV-81305, 2020 WL 5506445, at *3 (S.D. Fla. Sept. 14, 2020) ("[T]he courts must employ a liberal standard in keeping with the purpose of the discovery rules," although the 2015 amendments temper the element of relevance by allowing discovery "through increased reliance on the common-sense concept of proportionality.").

At the same time, "discovery, like all matters of procedure, has ultimate and necessary boundaries." *Hickman*, 329 U.S. at 507. When "it appears that further discovery would not be helpful in resolving the issues, a request for further discovery is properly denied." *Avirgan v. Hull*, 932 F.2d 1572, 1580-81 (11th Cir. 1991) (concluding that the

district court did not abuse its discretion in imposing discovery restrictions); *Aviation Specialties, Inc. v. United Techs. Corp.*, 568 F.2d 1186, 1190 (5th Cir. 1978) ("When the record becomes clear enough to disclose that further discovery is not needed to develop significant aspects of the case . . . discovery should be ended.").

"A party may move for an order compelling discovery from the opposing party." *Goodloe Marine, Inc. v. B.C. Towing, Inc.*, No. 8:20-cv-679, 2021 WL 4133736, at *1 (M.D. Fla. Sept. 10, 2021); Fed. R. Civ. P. 37(a). "The party moving to compel discovery has the initial burden of proving the requested discovery is relevant and proportional." *Id.* (citing *Douglas v. Kohl's Dept. Stores, Inc.*, No. 6:15-CV-1185-Orl-22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016)). "The responding party must then specifically show how the requested discovery is unreasonable or unduly burdensome." *Id.* (citing *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559-60 (11th Cir. 1985)).

The district court has broad discretion in making discovery rulings. *Iraola & CIA., S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003). The Eleventh Circuit "will not overturn discovery rulings unless it is shown that the District Court's ruling resulted in substantial harm to the appellant's case." *Harrison v. Culliver*, 746 F.3d 1288, 1297 (11th Cir. 2014).

IV.    Analysis

A.    Defendants Have Met Their Discovery Obligations Given the Special
       Circumstances of this Case

Venezuela's presidential crisis has been ongoing since 2019. *See* [ECF No. 93, pp.

3-4 ("Maduro was sworn in as president at the Venezuelan Supreme Court on January

10, 2019. That same day, however, the Venezuelan National Assembly declared the

results of the election invalid and invoked clauses of the 1999 Venezuelan Constitution

to appoint National Assembly Speaker Juan Guaidó as acting president, precipitating

what has become known as the Venezuelan 'presidential crisis.'")].

At the same time, cases continue to be brought against Venezuela or Venezuelan

instrumentalities or agencies in United States courts. *See, e.g, Saint-Gobain Performance*

*Plastics Eur. v. Bolivarian Republic of Venezuela*, No. CV 20-129 (RC), 2021 WL 326079, at *1

(D.D.C. Feb. 1, 2021), rev'd and remanded, 23 F.4th 1036 (D.C. Cir. 2022); *Koch Mins. Sarl*

*v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20 (D.D.C. 2020), reconsideration denied

sub nom. *Sarl v. Bolivarian Republic of Venezuela*, No. 17-CV-2559-ZMF, 2021 WL 3556565

(D.D.C. Feb. 22, 2021); *Crystallex Int'l Corp. v. PDV Holding Inc.*, No. 15-CV-1082-LPS, 2019

WL 6785504, at *1 (D. Del. Dec. 12, 2019). As a result, at least one court in this District

(*Comparelli*) has already confronted the Venezuelan presidential crisis in the context of a

motion to compel discovery.

*Comparelli* concerned three motions to compel jurisdictional discovery, for

contempt and for sanctions against the Republic of Venezuela (the "Republic"), Pequiven,

and International Petrochemical Sales, Ltd. ("IPSL"). 2021 WL 3550718, *1. The plaintiffs in *Comparelli*, like Plaintiff in this case, sought to compel better responses to written discovery. Judge McAliley held a hearing where she denied the plaintiffs' motion, with the exception of certain documents which the defendants agreed to seek from their banks. *Id.* & n.1.

In her order, Judge McAliley discussed her reasons for finding that the information sought by the plaintiffs' discovery was not in the defendants' possession, custody, or control and was controlled by representatives of the Maduro regime.

Judge McAliley noted that the defendants had timely responded to the discovery requests, "produc[ing] some responsive documents and answer[ing] some interrogatories, [although] that information was limited and came from sources other than those controlled by the Maduro government." *Id.* at *2. She also noted that the

> [d]efendants included in their objections a statement, in sum and substance, that any responsive documents, information and witnesses located in Venezuela [were] possessed and controlled by the Maduro regime, which [would] not allow [the] [d]efendants and their counsel access to that information and that for [that] reason [the] [d]efendants [were] unable to produce that information (herein, the "Objection").

*Id.* The plaintiffs sought to overrule this Objection, arguing that it was meritless.

Judge McAliley included in her order a brief overview of the Venezuelan presidential crisis:

> Venezuela has been in turmoil for years, causing its people great suffering. Of significance here, is the outcome of the May 2018, presidential election. Then-President Nicolas Maduro claimed victory in that election and thus a

13

second term as President. Evidence of electoral fraud, however, led the democratically elected Venezuelan National Assembly to declare the election invalid and to appoint its Speaker, Juan Guaido, as Interim President of Venezuela, and Guaido was sworn-in as President on January 23, 2019. The same day, the United States recognized Guaido as the legitimate leader of Venezuela. Many other nations have done the same. While both Guaido and Maduro continue to claim the Presidency, Maduro has the support of the National Armed Forces, and control of government ministries, their facilities, and State-owned enterprises . . . .

Guaido has nonetheless established his own government. In 2019, the National Assembly authorized President Guaido to appoint a Special Attorney General, and he did so. The Special Attorney General is empowered to safeguard Venezuelan interests abroad, to include appointing counsel to represent the Republic and its entities in litigation in other countries. The National Assembly also appointed an Administrative Ad-Hoc Board of Directors of Pequiven, which is tasked with representing its interests and those of its associated companies[.]

*Id.* at *2 (footnote omitted).

Judge McAliley also noted the special circumstances of the case:

[B]efore this Court, the Republic, and its associated agencies Pequiven and IPSL, are subject to the authority of the Guaido government, and answer only to it, while the Maduro regime controls their facilities, assets and information that are located in Venezuela. **The difficulty this places on the discovery process is obvious**.

*Id.* at *3 (emphasis added).

The *Comparelli* plaintiffs advanced two arguments, which Judge McAliley rejected.

First, they argued that the "Court should ignore the reality of the divided and competing governments in Venezuela." *Id.* Second, the *Comparelli* plaintiffs argued that the defendants should be sanctioned for their failure to meet their discovery obligations which would ultimately result in a default judgment against them. *Id.*

14

In rejecting the first argument, Judge McAliley noted that "[t]he records before [the] Court demonstrate[d] that the Guaido administration, which this country and [the] Court recognizes, and which represent[ed] [the] [d]efendants in [the] case, [could not] access information the Maduro regime control[ed] – which include[d] information [the] [p]laintiffs [sought] in discovery." *Id.* Judge McAliley cited to portions of the declaration of an attorney who served as the Director of the Special Attorney General's Office, which she described as "specifically and concretely explain[ing] [the] [d]efendants' inability to secure information located in Venezuela that [was] possessed and controlled by the Maduro government." *Id.* at *4-5.

She also noted that: (1) these sworn averments were "corroborated by publicly available and verified information about Maduro's control of the physical facilities and records of Venezuela's government and its agencies, and his refusal to share that information with the Guaido government"; (2) a "2020 Report of the United Nations Human Rights Council . . . documented evidence of unlawful executions, enforced disappearances and arbitrary detentions and torture in Venezuela since 2014, linked to Maduro and his loyalists"; and (3) other courts have acknowledged that "Guaido's regime does not have meaningful control over Venezuela or its principal instrumentalities such as PDVSA." *Id.* at 5-6 (quoting *Crystallex Int'l. Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 135 n.2 (3d Cir. 2019)).

Based on this record, Judge McAliley found that the "[d]efendants [did] not have possession of, nor the ability to enforce their legal right to obtain, information controlled by the Maduro government" and had met the good faith requirement in *Searock v. Stripling*, 736 F.2d 650, 654 (11th Cir. 1984).[3] *Id.* at *6. Judge McAliley denied the plaintiffs' motion to compel because "[n]o court can compel someone to produce something it does not have and cannot get." *Id.*

Judge McAliley also determined that sanctions were not warranted because the defendants had served their responses and objections by the deadline set in the amended scheduling order, the plaintiffs had provided no justification for the entry of an order which would result in a default judgment if the defendants did not produce the discovery in the possession and control of the Maduro government, and the plaintiffs were not entitled to attorney's fees because the Court was denying their motion to compel. *Id.*

Although *Comparelli* concerned jurisdictional discovery, the same principles and concerns apply to the substantive discovery at issue here.

---

[3]     In *Searock*, the Eleventh Circuit reversed a district court's dismissal of a party's counterclaim as a discovery sanction where the sanctioned party had offered to obtain documents from third parties in response to a request for production, but was ultimately unable to obtain the documents. 736 F.2d at 651-53. The appellate court determined that "the primary dispositive issue [was] whether [the party responding to the discovery] made a good faith effort to obtain the documents over which he may have indicated he had 'control' in whatever sense, and whether after making such a good faith effort he was unable to obtain and thus produce them." *Id.* at 654.

16

Despite the analogous posture of the *Comparelli* case, Plaintiff urges the Court not to follow Judge McAliley's ruling. [ECF No. 94, p. 2 ("Defendants' attempt to rely upon *Comparelli* should be rejected because this Plaintiff is not taking the same position articulated by the plaintiffs in that case.")]. But Plaintiff does not convincingly distinguish *Comparelli*.

Plaintiff notes that:

Defendants have never tried to obtain the information – and never will – so long as the Maduro regime remains in power. **If Defendants refuse to even ask the Maduro regime for documents or information for political reasons having nothing to do with this case, they cannot claim they are in compliance with the Federal Rules of Civil Procedure**.

*Id.* (emphasis added).

Plaintiff *states* that -- unlike the plaintiffs in *Comparelli* -- it is not asking the Court to ignore the Venezuelan presidential crisis, to sanction Defendants for not providing discovery they cannot obtain from the Maduro regime, or even "asking the Court to wade into Venezuelan politics in order to resolve this discovery dispute." *Id.* But in asking the Court for an Order compelling Defendants to change their discovery responses, they are (for all intents and purposes) asking the Court to *ignore* the political crisis in Venezuela.

Plaintiff states that "[i]f, as Defendants contend, they are unable to produce documents or provide information, their responses should be succinct and direct, such as "none" and "without knowledge." *Id.* But by seeking an Order compelling Defendants to change their answers, Plaintiff is asking the Court to turn a blind eye to the practical

17

reality that Defendants' discovery responses are based on what limited information is

available to Defendants *because* of the Maduro regime.

The declarations submitted by Defendants make clear that neither the declarants

nor the current board members have personal (or professional) knowledge concerning

the information Plaintiff seeks in discovery. The Medina Declaration states:

> 6.       In no professional or personal capacity did I ever learn or was I ever
> made aware of information that would have prepared me to competently
> testify as to the topics identified by . . . [P]laintiff.
>
> 7.       Four other individuals serve on the PDVSA Ad-Hoc Board alongside
> me: Ricardo Prada, Julian Cardenas, Javier Linares and Exeario Boscan, as
> ratified in the Legislative Gazette No. 48 dated as of May 28, 2021.
>
> 8.       In their personal and professional capacities, these members of the
> PDVSA Ad-Hoc Board have never been in a position to learn or become
> aware of information that would have prepared them to testify competently
> as to the topics identified by . . . [P]laintiff, and they cannot be prepared to
> do so given our lack of access to documents.

[ECF No. 93-1, ¶¶ 6-8].

The ad hoc board members cannot obtain this information because it is located in

Venezuela:

> 9.       Due to the ongoing constitutional crisis in Venezuela, the PDVSA
> Ad-Hoc Board is unable to review documents or collect information that
> could be produced or that would prepare any of its members to testify, as
> corporate representatives of Bariven, to the topics presented by . . .
> [P]laintiff.
>
> 10.      The documents that could inform the PDVSA Ad-Hoc Board about
> these topics are, to the best of the PDVSA Ad-Hoc Board's knowledge,
> contained in the offices of Bariven in Venezuela.

\*\*\*

12.     As stated above, the PDVSA Ad-Hoc Board cannot access Bariven's offices nor the documents contained therein.

13.     Without access to these documents, the PDVSA Ad-Hoc Board is unable to provide any individual competent to testify on the topics.

14.     The members of the PDVSA Ad-Hoc Board further cannot identify any other individual(s) with the requisite knowledge to testify competently as to the topics identified by . . . [P]laintiff.

*Id.* at ¶¶ 9-10, 12-14.

The Bracho declaration contains similar attestations:

7.     In no professional or personal capacity did I ever learn or was made aware of information that would have prepared me to competently testify as to the topics identified by . . . [P]laintiff.

8.     Three other individuals serve on the Pequiven Ad-Hoc Board alongside me: Winston Cabas, Ivan Ivanoff, and Fernando Asenjo.

\*\*\*

13.     In no professional or personal capacity did Mr. Cabas ever learn or was made aware of information that would have prepared him to competently testify as to the topics identified by . . . [P]laintiff.

\*\*\*

15.     In no professional or personal capacity did Mr. Ivanoff ever learn or was made aware of information that would have prepared him to competently testify as to the topics identified by . . . [P]laintiff.

\*\*\*

18.     In no professional or personal capacity did Mr. Asenjo ever learn or was made aware of information that would have prepared him to competently testify as to the topics identified by . . . [P]laintiff.

*** 

20.     Due to the ongoing constitutional crisis in Venezuela, the Pequiven Ad-Hoc Board is unable to review documents or collect information that could be produced or that would prepare any of its members to testify as corporate representatives of Pequiven, to the topics presented by . . . [P]laintiff.

21.     The documents that could inform that [sic] Pequiven Ad-Hoc Board about these topics are, to the best of the Pequiven Ad-Hoc Board's knowledge, contained in the offices of Pequiven in Venezuela.

*** 

24.     Without access to these documents, the Pequiven Ad-Hoc Board is unable to provide any individual competent to testify on the topics.

25.     The members of the Pequiven Ad-Hoc Board further cannot identify any other individual(s) with the requisite knowledge to testify competently as to the topics identified by . . . [P]laintiff.

[ECF No. 93-2, ¶¶ 7-8, 13, 15, 18, 20-21, 24-25].

Plaintiff briefly addresses the declarations of Medina and Bracho, stating that these declarations "do not explain why the Defendants have never even asked for the documents or information." [ECF No. 94, p. 7]. Plaintiff states that "[it] and the Court are left to speculate as to why Defendants (or their counsel) cannot so much as send an email or pick up the telephone to informally request the information and/or documents Plaintiff seeks." *Id.* at 7-8.

Plaintiff also argues, in a footnote, that "the Court should prohibit Defendants from subsequently asserting [that] these individuals have knowledge sufficient to testify on any of these topics." *Id.* at 7 n.2. "[A]ddressing legal arguments in footnotes is an

incorrect method to present substantive arguments on the merits or otherwise request relief from the Court." *Sony Music Ent. v. Vital Pharms., Inc.*, No. 21-22825-CIV, 2022 WL 4771858, at *13 (S.D. Fla. Sept. 14, 2022). Further, Plaintiff's failure to support this argument with any legal authority effectively waives the argument. *Flanigan's Enterprises, Inc. of Georgia v. Fulton Cnty., Ga.*, 242 F.3d 976, 987 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument). For these reasons, the Undersigned will not address Plaintiff's argument here. Plaintiff is free to raise this argument to the District Court, if it wishes to do so.

While Plaintiff takes issue with the form of the declarations (and states that additional information could have been included), Plaintiff does not dispute the *substance* of these declarations or present competing evidence casting doubt on their veracity. Thus, for purposes of this Order, the Medina and Bracho declarations are unrefuted.

In lieu of *Comparelli*, Plaintiff urges the Court to follow *VeroBlue Farms USA Inc. v. Wulf*, No. 3:19-CV-764-X, 2021 WL 5176839, at *1 (N.D. Tex. Nov. 8, 2021). But *Wulf is* a garden-variety discovery dispute and the district court in that case had no occasion to consider the impact a divided government would have on a state-owned litigant's ability to provide full and complete discovery responses. Plaintiff has not made a persuasive showing that when provided with a case from this Court addressing a discovery dispute involving the same presidential crisis (*Comparelli*), the Undersigned should nonetheless

follow a decision from the Northern District of Texas, which did not confront the same uncommon circumstances.

The Undersigned will follow Judge McAliley's well-reasoned opinion in *Comparelli*. Based on the record presented in this case, the Undersigned concludes that, as in *Comparelli*, "Defendants do not have possession of, nor the ability to enforce their legal right to obtain, information controlled by the Maduro government." 2021 WL 3550718, *6. For the reasons discussed in this Order, the Undersigned further finds that Defendants have met the good faith standard in *Searock*. 736 F.2d at 654 (concluding that a party had made a good-faith effort to find the requested documents based on "uncontradicted representation[s]" in "responses to the request for production, . . . responses to motions for sanctions, and . . . motions for clarification and relief from the dismissal orders").

Plaintiff points out that Defendants have not so much as picked up a phone and asked for the documents and information from the Maduro regime. [ECF No. 94, p. 2 ("If Defendants refuse to even ask the Maduro regime for documents or information for political reasons having nothing to do with this case, they cannot claim they are in compliance with the Federal Rules of Civil Procedure.")]. But Defendants have submitted sworn declarations from two ad hoc board members attesting to their credible fear of "imminent risk of arrest" if they return to Venezuela. *See* Medina Declaration [ECF Nos. 93-1, ¶ 4 ("[T]he Maduro-controlled Supreme Tribunal of Justice of Venezuela has

deemed the members of the PDVSA Ad-Hoc Board 'criminals' because they are allegedly usurping public functions.")]; Bracho Declaration [ECF No. 93-2, ¶ 4 (same)]. Plaintiff does not explain why there would be reason to believe that a regime that has labeled Defendants' ad-hoc board members "criminals" and, if given the opportunity, would arrest these board members, would willingly provide information by phone or email, or ship documents to Defendants, if only they'd ask.

Given the grim and practical realities of Venezuela's ongoing presidential crisis, Plaintiff cannot, to use an expression, get blood from a stone. If Defendants do not now have the information and documents (which appears to be the case), then no number of orders can compel production of that discovery. As Judge McAliley noted in *Comparelli*, "[n]o court can compel someone to produce something it does not have and cannot get." 2021 WL 3550718, at *6.

Credible claims of imminent arrest are sufficient to convince the Court that Defendants cannot obtain responsive information and documents from the Maduro regime, even if they ask nicely. At bottom, Defendants have participated in the discovery process in good faith but simply cannot provide the documents and information Plaintiff seeks due to the extraordinary circumstances of this case.

### B.     Defendants' Discovery Responses and Boilerplate Objections

In its memorandum, Plaintiff addresses Defendants' discovery responses and provides reasons to support its argument that they are deficient under the Federal Rules of Civil Procedure. [ECF No. 94, pp. 3-8 (addressing responses to requests for admission, answers to interrogatories, and responses to requests for production)]. Plaintiff also points out that Defendants' use of "conclusory and boilerplate objections" violate the Undersigned's Discovery Procedures Order [ECF No. 68 ("DPO")]. *Id.* at 6.

Plaintiff is correct that the DPO prohibits boilerplate objections, [ECF No. 68, pp. 8-10], and some of Defendants' responses to Plaintiff's written discovery include boilerplate objections. But, given the Undersigned's ruling above, it would be an exercise in futility to overrule Defendants' objections and require them to provide better responses to Plaintiffs' discovery.

As a practical matter, it seems likely that an order requiring Defendants to provide more detailed discovery responses would provide Plaintiff with only *illusory* relief -- as it appears based on the record before the Undersigned as though Defendants would be unable to actually give additional information or provide any documents. Neither the Court nor Defendants have a mechanism to compel the Maduro regime to provide the information and documents Defendants need in order to provide better discovery responses.

But the Court will permit Plaintiff to inquire into Defendants' efforts to respond to the written discovery. For instance, Plaintiff notes that the declarations submitted by Defendants "do not explain why the Defendants have never even asked for the documents or information" and "Plaintiff and the Court are left to speculate as to why Defendants (or their counsel) cannot so much as send an email or pick up the telephone to informally request the information and/or documents Plaintiff seeks." [ECF No. 94, pp. 7-8]. The Undersigned will outline below a procedure which will allow Plaintiff, if it so wishes, to inquire into this limited topic.

## V.      No Fee-Shifting Award

Rule 37(a)(5) provides that an expense/fees order should not be entered if the opposing party's discovery response was substantially justified or if other circumstances make an award unjust. The Undersigned will not impose a fee-shifting award pursuant to Fed. R. Civ. P. 37(a)(5). Given Venezuela's ongoing presidential crisis, Defendants' positions were substantially justified under the special circumstances of this case. Alternatively, the Venezuelan presidential crisis would make a fee-shifting award unjust. The imposition of a fee-shifting award is not warranted.

In announcing the ruling that a fee-shifting award is inappropriate, the Undersigned notes that there is no doubt that magistrate judges are afforded broad discretion in resolving nondispositive discovery disputes. *Tracy P. v. Sarasota Cty.*, No. 8:05CV927T27EAJ, 2007 WL 1364381, at *2 (M.D. Fla. May 9, 2007).

25

A district judge may modify or set aside a magistrate judge's discovery rulings which are clearly erroneous or contrary to law, a standard which is "extremely deferential." *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co., Inc.*, No. 12-CV-81397, 2015 WL 11921411, at *1 (S.D. Fla. July 6, 2015) (internal quotation omitted). "A finding is clearly erroneous only if 'the reviewing court, after assessing the evidence in its entirety, is left with a definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *Krys v. Lufthansa German Airlines*, 119 F.3d 1515, 1523 (11th Cir. 1997)). Or, as the Seventh Circuit has put it: "[t]o be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must . . . strike us as wrong with the force of a five-week-old, unrefrigerated dead fish." *Parts & Elec. Motors v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988). The Eleventh Circuit has quoted the "refrigerated dead fish" analogy with approval. *See e.g., Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272, n.92 (11th Cir. 2015) (using expression to support the rule that "in a close case, a court must defer to the legal conclusion of a coordinate court in the same case; only when the legal error is beyond the scope of reasonable debate should the court disregard the prior ruling," a standard our appellate court described as "a high bar").

Moreover, "[t]he mere fact that a reviewing court might have decided the issue differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Pendlebury v. Starbucks Coffee Co.*, Case No. 04-80521, 2007 WL 4592267, at

26

*2–3 (S.D. Fla. Dec. 28, 2007) (internal citation omitted). "[T]he 'clear error' exception must be rarely invoked." *Cox Enters., Inc.*, 794 F.3d at 1272.

Given this broad discretion, the Undersigned makes the following observations (in general) and rulings about discovery (in this particular case) -- and notes that these rulings concern only discovery, and not admissibility at trial or for use in other settings, such as advancing or defending a summary judgment motion. To be sure, another magistrate judge could reach a different decision about Defendants' discovery position here, but the mere fact that a reviewing court may decide the issue "differently is not sufficient to overturn a decision when there are two permissible views of the issue." *Sun Cap. Partners*, 2015 WL 11921411, at *1 (denying objections to magistrate judge's discovery order) (internal quotation omitted); *see generally Am. Family Mut. Ins. Co. v. Roth*, No. 05C 3839, 2010 WL 3397362, at *2 (N.D. Ill. Aug. 25, 2010) ("[I]ndeed, on virtually identical facts, two decision makers can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion." (internal citations omitted)).

## VI.   Conclusion

For the reasons discussed in this Order, the Undersigned will not compel Defendants to provide additional responses to Plaintiff's written discovery.

Plaintiff will have until Monday, December 12, 2022 to either provide Defendants with a list of topics concerning any non-privileged matter related to Defendants' efforts to obtain information and documents responsive to Plaintiffs' written discovery or advise

Defendants that it is no longer seeking this information. Defendants will prepare a witness (or witnesses) to competently testify as to this limited area of inquiry. The deposition(s) will take place by videoconference by no later than Friday, December 23, 2022. Plaintiff is forewarned that any testimony that Defendants did not reach out to the Maduro regime to obtain information and responsive documents is *not* by itself automatic and specific grounds for reconsideration of this Order.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on December 8, 2022.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies furnished to</u>:**
Honorable Robert N. Scola, Jr.
All counsel of record