United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Isaac Industries, Inc., Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 19-23113-Civ-Scola |
| | ) |
| Petroquimica de Venezuela, S.A. | ) |
| and others, Defendants. | ) |

### Order Granting, in Large Part, Plaintiff's Motion for Summary Judgment

Plaintiff Isaac Industries, Inc., a wholesale distributor of various chemicals, seeks to recover nearly $18 million, excluding interest, from Defendants Petroquimica de Venezuela, S.A. ("Pequiven") and Bariven, S.A., in connection with three large shipments of 2-Ethylhexanol Isaac sent to Bariven in 2014.[1] In its complaint, Isaac lodges breach-of-contract claims against both Pequiven (count one) and Bariven (count two) and a claim for account stated against Bariven (count three). (Am. Compl. ("Compl."), ECF No. 71.) Isaac now seeks summary judgment in its favor, claiming entitlement to $23,384,373. (Pl.'s Mot., ECF No. 104.) In opposition, the Defendants argue Isaac failed to establish (1) the Court's subject-matter jurisdiction over Pequiven; (2) the existence or terms of any contract with Bariven; and (3) that Bariven promised to pay the amounts indicated on Isaac's invoices. (Defs.' Resp. to Pl.'s Mot., ECF No. 132.) Isaac has timely replied. (Pl.'s Reply, ECF No. 136.) After review, the Court **grants** Isaac's motion for summary judgment (**ECF No. 104**), **in part**, as to counts one and two and **denies it as moot, in part**, as to count three.

1. **Background**[2]

Through its owner, David Avan, Isaac says Bariven ordered a total of 5,993.873 metric tons of 2-Ethylhexanol, agreeing to pay $2,975 per metric ton. (Pl.'s Stmt. of Facts ¶¶ 5–6, ECF No. 105.) As each of three individual orders was shipped, Isaac says it provided Bariven with an invoice. (*Id.* ¶ 7.) The first two invoices, numbered 25012 and 250122, are both dated July 6,

---

[1] The Court previously dismissed a third defendant, Petroleos De Venezuela, S.A. ("PDVSA"), finding Isaac failed to establish that PDVSA was not immune from suit. (Order on Mot. to Dismiss, ECF No. 81.)

[2] The factual representations that follow are based on Isaac's statement of material facts and the documents cited therein. (Pl.'s Stmt. of Facts, ECF No. 105.) The Defendants' quarrel with those facts will be addressed within the Analysis section, below.

2014, and reflect amounts due of $5,950,000.00 and $5,941,928.93, respectively. (*Id.*; *see also* Inv. 1, ECF No. 104-1, 5; Inv. 2, ECF No. 104-1, 6.) The third invoice, numbered 25114, is dated September 19, 2014, and reflects an amount due of $5,939,843.35. (Pl.'s Stmt. ¶ 7; *see also* Inv. 3, ECF No. 104-1, 7.)

According to Isaac, the amounts indicated on the invoices were due within 60 days after each delivery in Venezuela, with payment to be made to Isaac in the United States, in U.S. dollars. (*Id.* ¶ 8.) Although Bariven never voiced any objections to Isaac about the invoices, it also never paid any of the amounts due. (*Id.* ¶¶ 9–10.)

After about two years went by, without any payment from Bariven, Avan, in September 2016, met with representatives from Bariven's parent company, Pequiven, in Miami, Florida. (*Id.* ¶¶ 11–12.) At that meeting, Avan discussed Bariven's outstanding balance at length and Pequiven agreed to cover the debt, memorializing the plan in a written agreement. (*Id.* ¶¶ 12–13; *see also* Agmt., Pl.'s Ex. C, ECF No. 104-1, 10–13.)

As set forth in this agreement, Pequiven "assumed the debt incurred by Bariven owed to [Isaac]." (Agmt. at 11; Pl.'s Stmt. ¶14.) The payment terms applied an annual 5% interest rate to the $17,831,772.18 principal amount, starting from the due date of the invoices through the date of the agreement. (Agmt. at 11; Pl.'s Stmt. ¶ 15.) On top of that interest, Pequiven also agreed to pay 6% interest per year, starting January 1, 2017, for financing the remaining amounts owed, until the full debt was paid. (Agmt. at 12; Pl.'s Stmt. ¶17.) Further, Pequiven agreed to pay 15% of the debt, plus interest, by December 31, 2016, followed by six quarterly installment payments, with the final payment due on June 30, 2018. (Agmt. at 11–12; Pl.'s Stmt. ¶¶16, 18.) All payments were due to Isaac in the United States and in U.S. dollars. (Pl.'s Stmt. ¶ 19.)

Consistent with the written agreement, Pequiven tendered a payment of $2,947,542.00 (representing 15% of the debt plus interest) to Isaac on December 30, 2016. (*Id.* ¶ 20.) No further payments ever followed, however, from either Bariven or Pequiven. (*Id.* ¶¶ 21, 24.) Based on the written terms between Pequiven and Isaac, Isaac says Pequiven owes, as of February 15, 2023, $23,384,373.00, inclusive of principal and interest. (*Id.* ¶ 23.) Bariven's tab, on the other hand, amounts to $15,111,440.00, plus prejudgment interest. (*Id.* ¶ 25.)

Isaac filed its complaint against the Defendants on July 26, 2019. (*Id.* ¶ 26.) In answering the complaint and responding to discovery, the Defendants have repeatedly opined that the ongoing political crisis in Venezuela has

prevented them from obtaining information and evidence relevant to the case against them. (*Id.* ¶¶ 31, 33–37.)

### 2. Legal Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

"When the plaintiff moves for summary judgment and also bears the burden of proof on a claim at trial," as here, "then the plaintiff must affirmatively show that no genuine dispute exists as to any material fact relevant to the plaintiff[']s claims and must produce such evidence as would entitle the plaintiff to a directed verdict if not controverted at trial." *Lodge v. Kondaur Capital Corp.*, 1:10-CV-0736-WCO-LTW, 2012 WL 12868850, at *3 (N.D. Ga. Dec. 4, 2012), *rep. & rec. adopted*, 1:10-CV-736-WCO-LTW, 2013 WL 12092555 (N.D. Ga. Jan. 29, 2013), *aff'd,* 750 F.3d 1263 (11th Cir. 2014) (citing Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993)). Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, whether or not accompanied by affidavits, the nonmoving party must go beyond the pleadings through the use of affidavits, depositions, answers to interrogatories, admissions on file and other documents, and designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 323–24. The nonmovant's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *Anderson*, 477 U.S. at 249; *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant

summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

### 3. Analysis

#### A. Isaac has established its entitlement to summary judgment in its favor on its breach-of-contract claim against Pequiven.

Isaac maintains it has demonstrated an absence of any genuine dispute as to the material facts supporting its breach-of-contract claim against Pequiven. In response, the Defendants argue that Pequiven is immune from the Court's jurisdiction because Isaac has not proven the existence of any exception to Pequiven's sovereign immunity under the Foreign Sovereign Immunities Act. The Court agrees with Isaac and finds the Defendants' arguments unconvincing. As an initial matter, the Court is satisfied that Isaac has affirmatively shown, by producing evidence that would entitle it to a directed verdict if not controverted at trial, that no genuine dispute exists as to any material fact relevant to its claim against Pequiven. Secondly, the Defendants' jurisdictional arguments miss the mark.

#### (1) The undisputed material facts establish Isaac's breach-of-contract claim against Pequiven.

"To prevail in a breach of contract action, a plaintiff must prove: (1) a valid contract existed; (2) a material breach of the contract; and (3) damages." *Deauville Hotel Mgmt., LLC v. Ward*, 219 So. 3d 949, 953 (Fla. 3d DCA 2017). Here, Isaac presents a written document that Isaac's owner, Avan, has testified encompasses Isaac and Pequiven's agreement. (Avan Decl. ¶¶ 12–14, ECF No. 104-1, 1–4; Agmt. at 10–13.) Avan testified that he met with representatives from Pequiven, Joel Alvarez and Saul Silva, in Miami, Florida, in September 2016. (Avan Decl. ¶ 12.) According to Avan, Alvarez was Pequiven's "Manager of Planning and Market Intelligence" and Silva was acting in his capacity as Pequiven's agent. (*Id.*) During the meeting, Bariven's outstanding debt was discussed at length. (*Id.* ¶ 13.) Ultimately, as a result of the meeting, Pequiven, as Bariven's parent company, assumed Bariven's debt to Isaac. (*Id.* ¶¶ 13–14.) Avan testified that, in exchange for Pequiven's offer to take on the debt, under the terms set forth in the written agreement, Isaac would release Bariven from its payment obligations—contingent, however, on Pequiven's full performance—and allow for a protracted payment plan. (*Id.* ¶¶ 15, 17, 19.)

In disputing most of Isaac's statement of facts, and Avan's testimony upon which Isaac primarily relies, the Defendants' objections fall into two general categories. First, the Defendants repeatedly complain that they "are not in a position to confirm the veracity" of Isaac's various "bare statements." (*E.g.*,

Defs.' Stmt. ¶¶ 11–12, ECF No. 133.) Second, they submit, generally, that Isaac has not proven that Bariven owes anything to begin with or that Pequiven and Isaac entered into an enforceable contract. (*E.g., id.* ¶¶ 11–14.) The Court is not persuaded by either approach.

The Defendants' complaint that they are unable to access evidence to support their defense of Isaac's lawsuit against them has no bearing on whether the facts asserted are genuinely disputed. This case is now four years old. The Defendants have appeared and defended this case and the discovery period has long since closed. Neither Isaac nor the Court has prevented the Defendants from engaging in discovery, presenting evidence, or asserting defenses. The Defendants' inability to controvert Avan's testimony and Isaac's documentary evidence, without more, leaves the facts Isaac presents through its motion for summary judgment uncontroverted.

Next, the Court finds the material facts Isaac relies on properly supported by the record and sufficient to prove its case. "If the moving party will bear the burden of persuasion at trial," like Isaac here, "that party must support its [summary-judgment] motion with credible evidence that would entitle it to a directed verdict if not controverted at trial." *Turnes v. AmSouth Bank, NA*, 36 F.3d 1057, 1062 n. 11 (11th Cir. 1994) (cleaned up). Despite the Defendants' various protestations, the Court concludes Isaac has done so.

For example, the Defendants' quarrel with Isaac's position that Silva was acting as Pequiven's agent is misdirected. Part of the Defendants' argument is that whether Silva was indeed Pequiven's agent "is a legal conclusion" and, therefore, is not appropriately designated as an undisputed material fact. (Defs.' Stmt. ¶ 11.) The Defendants also submit, in purely conclusory fashion, that Isaac "has not proven that the individuals purporting to act on Pequiven's behalf had the authority to bind Pequiven." (*Id.* ¶ 14.) But Isaac's agency claim is more than adequately bolstered by Avan's testimony and documentary evidence. Avan testified that he was invited by Pequiven's "Manager of Planning and Market Intelligence International Trade" to attend a meeting to resolve Bariven's outstanding debt. (*Id.* ¶ 12 (citing Email Corr. from Alvarez, Decl. Ex. B, ECF No. 104-1, 8–9).) Avan also testified that Silva attended and participated in this meeting on behalf of Pequiven. (Avan Decl. ¶¶ 12–14 (citing to Agmt.).) And, finally, Isaac produced a document specifying that Pequiven was "represented in this act" by three individuals—Jose Luis Perez, Pedro Lugo, and Silva—who were acting "in their capacity[ies] as Commercial Director, Finance Executive Director and Legal Counsel." (Agmt. at 11.) Without any real

challenge from the Defendants, these unrebutted facts, supported by credible evidence, are enough to establish that Silva was acting as Pequiven's agent.[3]

The Defendants also complain that Isaac's evidence does not sufficiently establish (1) that Bariven owed any money to Isaac; (2) that Pequiven and Isaac's agreement was supported by consideration; or (3) that the agreement is at all enforceable. (*E.g.*, Defs.' Stmt. ¶¶ 12–14.) The Court is unpersuaded. The invoices showing the shipments of the chemical from Isaac to Bariven, combined with Avan's testimony and other documentary evidence, sufficiently demonstrate Bariven's debt. And to the extent Isaac is even required to establish the sufficiency of the agreement's consideration, it has shown that Pequiven is Bariven's parent company and that Isaac agreed to release Bariven from its payment obligations as well as allow for a protracted payment plan on amounts that were long since past due. While there are certainly cases where a benefit to a subsidiary does not necessarily translate to a benefit to a parent company, the Defendants have supplied no facts indicating that is the case here. And both the invoices and the written agreement here appear to establish very close economic ties between parent and sub. Two of the invoices for the chemical shipments, invoice numbers 25012 and 250122, indicate an understanding that Bariven's parent company—presumably Pequiven—will issue a "PARENT PERFORMANCE GUARANTEE." (Inv. 1; Inv. 2.) The third invoice, invoice number 25114, lists Pequiven as one of the "CONSIGNED/NOTIFY TO" entities. (Inv. 3.) And the agreement between Pequiven and Isaac references what appears to be a previously executed "payment contract with subrogation of debt" entered into among Bariven, PDVSA, Pequiven, and Isaac. (Agmt. at 11.) While this evidence might wither in the face of a rigorous cross examination, or the production of contrary evidence, that is not the procedural posture of this case. Without more, in light of the record supporting Isaac's motion for summary judgment, the Defendants

---

[3] The Defendants also attempt to present the testimony of Jesus Bellorin, who they say was recently appointed as "the Single Administrator of Pequiven," to establish that none of Perez, Lugo, nor Silva had any authority to act on Pequiven's behalf. (Defs.' Stmt. ¶ 51.) The Court declines to consider this testimony or any of the documentary evidence the testimony is based on in evaluating Isaac's motion: the Defendants failed to disclose any of this evidence during the discovery period in this case nor did they present any proper justification for producing it beyond the deadline to do so. *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."); *De Zayas v. Bellsouth Telecommunications, Inc.*, 841 F. Supp. 2d 1257, 1258 (S.D. Fla. 2012) (Scola, J.) (rejecting a party's attempt to rely on a report produced after the close of discovery, finding it "properly excluded as the [parties] were given an adequate opportunity to prepare and to litigate this matter".

unsupported speculation that the agreement is not enforceable is without merit.

If the Defendants had wanted to probe and test Avan's testimony or the legitimacy of the documentary evidence, they could have done so through a fulsome vetting during the discovery process. They chose not to and so now the evidence stands unrebutted: Isaac has produced invoices directed to Bariven; an email from a Pequiven representative acknowledging the debt; a written document that on its face expresses an agreement between Isaac and Pequiven to take on the debt; a subsequent receipt for payment of nearly $3 million from Pequiven, consistent with the written agreement; and testimony from Avan, putting all the evidence into context. Isaac's unrebutted record evidence is enough.

In sum, Isaac has come forward with evidence that affirmatively shows there is no genuine dispute as to any material fact relevant to its breach-of-contract claim against Pequiven. Because the Court finds this testimonial and documentary evidence would be sufficient to entitle Isaac to a directed verdict if not controverted at trial, it grants summary judgment in Isaac's favor on count one.

### (2) The Defendants have failed to establish that Pequiven is immune from suit.

Both in their response to the Court's order to show cause regarding jurisdiction (Defs.' Resp. to Court, ECF No. 149) and in their response to Isaac's motion for summary judgment, the Defendants argue that the Court lacks subject-matter jurisdiction over Pequiven as a result of Pequiven's sovereign immunity. Although the Defendants do not dispute that Isaac has properly pleaded the applicability of an exception to Pequiven's immunity, they complain that Isaac has not yet "proven" that the exception applies. In support they rely on many of the same arguments that the Court previously addressed, in section A.(1), above. In summary, the Defendants says Isaac has failed to definitively estabblish the applicability of the commercial-activity exception or waiver. (Defs.' Resp. to Pl.'s Mot. at 8–16; Defs.' Resp. to Court at 4–12.) The Court is not persuaded.

First, the Court disagrees with the Defendants' position that, as a starting point, Isaac "must *prove* that each element of the exception [to immunity] is met." (Defs.' Reply to Court, ECF No. 151, 4; Defs.' Resp. to Pl.'s Mot. at 9 ("Plaintiff must actually prove that [the exception] applies.").) In light of the record in this case, it is not clear what the Defendants even mean by this. While the controlling case law expressly assigns the initial "burden of production" of establishing the applicability of an exception to FSIA immunity

to the plaintiff, that is not the same as requiring a plaintiff to "prove" that exception. *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313 (11th Cir. 2009). To be sure, that a plaintiff may meet its burden through both the "allegations in the complaint and the undisputed facts, if any, placed before the court by the parties," lays this distinction bare. *Id.*

Notably, the Defendants do not dispute that the complaint's allegations sufficiently plead the application of the commercial-activity exception as set forth in 28 U.S.C. § 1605(a)(2): a commercial activity, undertaken by Pequiven outside the United States in connection with a commercial activity elsewhere, which caused a direct effect in the United States. (Compl. ¶¶ 1–17.) With the statutory exception to immunity sufficiently demonstrated through Isaac's allegations of the commercial-activity exception, "the burden then shifts to the defendant to prove, by a preponderance of the evidence, that the plaintiff's claims do not fall within that exception." *Butler*, 579 F.3d at 1313; *see also Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for Galadari*, 12 F.3d 317, 325 (2d Cir. 1993) ("[T]he ultimate burden of persuasion remains with the alleged foreign sovereign.") (cleaned up). The Defendants have not met this burden.

As an initial matter, Pequiven answered Isaac's amended complaint, without asserting any claim to sovereign immunity. (Pequiven's Ans., ECF No. 82.) Prior to its response to Isaac's motion to summary judgment, Pequiven's only objection to jurisdiction based on the FSIA was through its motion to dismiss Isaac's initial complaint. (Pequiven's Mot. to Dismiss, ECF No. 21.) In that motion, Pequiven complained that the complaint was "*devoid* of any allegations that plausibly suggest that Isaac's claim against Pequiven falls within one of the FSIA's enumerated exceptions to immunity." (*Id.* at 12 (emphasis added).) But in answering Isaac's amended complaint, Pequiven failed to indicate in any way that it was not amenable to suit. (Pequiven's Ans., ECF No. 82.) Instead, Pequiven largely pleaded that it was "without knowledge" as to Isaac's allegations and interposed only two affirmative defenses: one complaining about the political crisis in Venezuela and one pleading a lack of consideration. (*Id.*) The Defendants fail to explain why this responsive pleading, omitting any assertion of sovereign immunity, was not an implicit waiver of its immunity. *See Canadian Overseas Ores Ltd. v. Compania de Acero del Pacifico S.A.*, 727 F.2d 274, 277 (2d Cir. 1984) (noting that the FSIA's legislative history recognized that "an implicit waiver would include a situation where a foreign state has filed a responsive pleading in an action without raising the defense of sovereign immunity" and that "sovereign immunity is an affirmative defense which must be specially pleaded for a court to consider it") (cleaned up) (citing

H.R. Rep. No. 1487, 94th Cong., 2d Sess., *reprinted in* 1976 U.S. Code Cong. & Ad. News 6604, 6616, 6617).

Despite Pequiven's answer, the Defendants insist Pequiven's immunity defense was preserved by (1) Pequiven's raising it in its motion to dismiss Isaac's initial complaint and (2) an agreed order wherein the Court preserved the "Defendants' ability to reassert the remaining bases for dismissal contained in their Motions to Dismiss" (ECF No. 34). The Court is not persuaded. First, the only claim to immunity Pequiven has made, until now, was based on deficiencies, since cured, in Isaac's initial pleading. Further, Pequiven's initial grievance was focused solely on Isaac's failure to present *any* allegations of an exception to immunity, not, as now, on the factual underpinnings of Isaac's allegations. Once Isaac amended its complaint, properly pleading the commercial-activity exception, the time for Pequiven to raise a challenge to Isaac's jurisdictional allegations was in its responsive pleading. By not doing so, the Court finds Pequiven exhibited "a conscious decision to take part in the litigation and a failure to raise sovereign immunity despite the opportunity to do so." *Drexel*, 12 F.3d at 327, 328 (cleaned up) (finding no waiver where defendant, throughout the litigation "consistently invoked FSIA immunity, or reserved the right to do so in the future, to an extent that precludes a determination that FSIA immunity was unambiguously and unmistakably waived"). Based on Pequiven's participation in this case for a year, after Isaac filed its amended complaint, without raising even the suggestion of FSIA immunity, in combination with its responsive pleading where Pequiven fails to mention immunity at all, the Court finds Pequiven "unambiguously and unmistakably waived" its right to raise it now.

Furthermore, even if the Court did not find waiver, the Defendants' objections to the factual bases that Isaac claims support the commercial-activity exception are, in any event, unavailing. At bottom, the Defendants' opposition, with the exception of the evidence regarding Pequiven's bylaws, amounts to nothing more than a complaint about what the Defendants perceive as weaknesses in Isaac's record evidence. Without producing any of their own contrary evidence, however, the Defendants can't carry their burden of persuasion just by raising speculative and cursory concerns about the quality of Isaac's evidence. Further, even if the Defendants' newly produced bylaws were properly before the Court, the Defendants do not dispute Isaac's point that the bylaws explicitly provide for the delegation of authority, by the president or the executive committee, to allow for others to execute contracts. (Pl.'s Resp. to Court's Order at 9 n. 7, ECF No. 150 (citing Bylaws at Chs. V, Cl. 28 and VII, ¶ 6, ECF No. 131-7, 31, 32).) Simply put, while the Defendants

express doubt about the strength of Isaac's evidentiary footing, they fail to produce any evidence actually controverting that evidence.

In sum, the Defendants fail to carry their "ultimate burden of persuasion" that Isaac's claim against Pequiven does not fall within a FSIA exception.

### B. Isaac has established its entitlement to summary judgment in its favor on its breach-of-contract claim against Bariven.

Isaac's record evidence supports its breach-of-contract claim against Bariven. That evidence, both testimonial and documentary, shows that Bariven ordered nearly 6,000 metric tons of 2-Ethylhexanol from Isaac for $17,831,772.18; that Isaac shipped the order to Bariven; and that Bariven never objected to the invoices nor submitted any payment to Isaac. (Pl.'s Stmt. ¶¶ 5–10.) In opposition, the Defendants (1) complain, once again, that the political crisis in Venezuela leaves them unable to confirm Isaac's claims and that the claims are merely legal conclusions masquerading as facts; (2) argue the invoices are unsigned and therefore insufficient to bind Bariven; and (3) insist Isaac has failed to establish that there was a meeting of the minds as to the essential elements of any agreement. (Defs.' Resp. to Pl.'s Mot. at 16–17.) The Court finds the Defendants' contentions unavailing.

The Court rejects the Defendants' first argument for the same reasons it rejected it with respect to Isaac's claim against Pequiven. (*See* section A.(1), above.) In short, the Defendants have appeared and defended this case and neither Isaac nor the Court has prevented them from litigating their defense. Further, in complaining about their lack of access to potential evidence in Venezuela, the Defendants do not even allege that they believe that that purported evidence would even be exculpatory. Further, by cherry picking Avan's testimony that the parties "contracted," the Defendants ignore all the testimonial and documentary evidence Isaac has produced, supporting its claim of a contract with Bariven.

The Defendants' supposition that, because the invoices are unsigned, they are therefore insufficient to establish an enforceable contract is also unpersuasive. The requirement, upon which the Defendants rely, under Florida's Uniform Commercial Code that "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and *signed by the party against whom enforcement is sought*" is not determinative. Fla. Stat. § 672.201(1). That is, "the lack of signature does not necessarily defeat Plaintiff's claims because an unsigned writing that constitutes a contract may be enforceable 'with respect to goods which have

been received and accepted.'" *T.T. Int'l Co., Ltd. v. BMP Int'l, Inc.*, 8:19-CV-2044-CEH-AEP, 2023 WL 1514347, at *13 (M.D. Fla. Feb. 3, 2023) (cleaned up) (quoting Fla. Stat. § 672.201(3)(c)). Although it's true that the "object of a signature is to show mutuality or assent," such aspects of a contract "may be shown in other ways, for example, by the acts or conduct of the parties." *Sierra Equity Group, Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1228 (S.D. Fla. 2009) (Marra, J.) (quoting *Gateway Cable T.V., Inc. v. Vikoa Construction Corp.,* 253 So.2d 461, 463 (Fla. 1st DCA 1971)). Accordingly, there is no hurdle to the Court's concluding that a "contract may be binding on a party despite the absence of a party's signature." *Sierra Equity*, 650 F. Supp. 2d at 1228 (quoting *Gateway,* 253 So. 2d at 463 (Fla. 1st DCA 1971)).

      Here, the unrebutted evidence—comprised of Avan's testimony, the invoices, the email from Alvarez, the written terms agreed to by Pequiven and Isaac, and the partial payment from Bariven's parent—combine to allow the Court to find that Bariven agreed to purchase the chemicals, that it received and accepted the shipments, and that it failed to pay for them. The Defendants' attempt to conjure a disputed issue of material fact misses the mark. Isaac has presented credible evidence that would entitle it to a directed verdict if not controverted at trial.

      The Defendants also argue that, even if the Court finds that Bariven and Isaac did enter into a valid contract, Isaac's later agreement with Pequiven amounts to a novation, extinguishing Bariven's original obligation. (Defs.' Resp. to Pl.'s Mot. at 18.) In support, the Defendants maintain that Isaac "admits that the purported Plaintiff-Pequiven agreement was intended to release Bariven's alleged debt" and cite to Isaac's statement of facts. (*Id.* (citing Pl.'s Stmt. ¶ 14).) While Isaac does say that Pequiven indeed took on Bariven's debt in exchange for "Isaac's release," the very next sentence clarifies that the release "was wholly contingent upon full payment by Pequiven and barring such full payment, Bariven remained responsible for the outstanding debt." (Pl.'s Stmt. ¶ 14.) And Pequiven and Isaac's written agreement supports this: the agreement, by its own terms, recites that is "does not eliminate the commercial and legal value of the invoices that resulted in this debt, nor does it mean a change in same." (Agmt. at 12.) While it may true, as the Defendants posit, that the parties' intent is not "readily ascertainable from the contract's terms," Avan's unrebutted testimony clarifies the purported ambiguity. *See Electro-Protective Corp. v. Creative Jewelry by Kempf, Inc.*, 513 So. 2d 190, 192 (Fla. 5th DCA 1987) ("[W]here there are disputes concerning the terms of an agreement and the intention of the parties at the time of its making, these are questions of fact which should be submitted to the trier of fact for resolution.").

In sum, Isaac has come forward with evidence that affirmatively shows there is no genuine dispute as to any material fact relevant to its breach-of-contract claim against Bariven. Because the Court finds this testimonial and documentary evidence would be sufficient to entitle Isaac to a directed verdict if not controverted at trial, it grants summary judgment in Isaac's favor on count two as well.

### C. The Court denies the Defendants' request that the Court deny or defer consideration of Isaac's motion for summary judgment.

As they have throughout this litigation, the Defendants once again complain about "the extraordinary political circumstances" in Venezuela that have prevented them "from accessing their corporate records, facilities, and personnel to fill the factual gaps." (Defs. Resp. to Pl.'s Mot. at 21.) Because of those circumstances, the Defendants maintain that deciding this motion in Isaac's favor "would be akin to entering a default judgment against Defendants." (*Id.* at 23.) Indeed, they say, anything short of the Court's denying or deferring consideration of Isaac's motion would amount to a denial of the Defendants' due-process rights. (*Id.* at 24.) The Court is not persuaded by the Defendants' request that the Court revisit this issue.

This case has been pending for nearly four years. The Defendants have appeared and have defended this case. Neither the Plaintiff nor the Court has prevented the Defendants from engaging in discovery or litigating this case. For reasons known only to them, the Defendants declined to depose Isaac's witness or otherwise proactively participate in the discovery process. In essentially seeking an indefinite stay of this case—until the political situation in Venezuela is or may be resolved—the Defendants fail to specify with any degree of particularity what benefit they might reap from the delay, aside from simply delaying the inevitable. Indeed, the Defendants' claims of prejudice and unfairness are wholly speculative, abstract, and hopeful: they do not identify a single piece of documentary or testimonial evidence that they believe might actually controvert Isaac's showing or help their case. Nor do they even explicitly deny Isaac's claims, instead confining their protests to purported deficiencies in Isaac's affirmative presentation of its case. In short, the Defendants' request for even further delay in this case is untenable and unjustified.

### 4. Conclusion

For the reasons set forth above, the Court **grants** Isaac's motion for summary judgment (**ECF No. 104**) **in part**, as to counts one and two of the complaint. But, because a plaintiff who "prevails on its breach of contract

claims. . . may not also recover for account stated," the Court **denies** Isaac's motion **in part** as to count three. *T.T. Int'l*, 2022 WL 971950, at *11; *see also Rolyn Const. Corp. v. Coconut Grove PT Ltd. P'ship*, 07-20834-CIV-HUCK, 2007 WL 2071268, at *2 (S.D. Fla. July 19, 2007) (Martinez, J.) (dismissing account-stated claim as duplicative of breach-of-contract claim); *City Beverage-Illinois, LLC v. Vital Pharm., Inc.*, 20-CV-61353, 2022 WL 3137051, at *10 (S.D. Fla. July 13, 2022) (Strauss, Mg. J.) (recognizing that a party may not recover on duplicative claims of breach of contract and account stated).[4]

As set forth in the record, the total balance owed by Pequiven, as of February 15, 2023, inclusive of principal and interest is $23,384,373.00. (Pl.'s Stmt. ¶ 23; Defs.' Stmt. ¶ 23 (objecting to liability but not amount).) And the total balance owed by Bariven is $15,111,440.00, plus interest. (Pl.'s Stmt. ¶ 25; Defs.' Stmt. ¶ 25 (objecting to liability but not amount).) Accordingly, Bariven and Pequiven are jointly and severally liable for $15,111,440.00, plus interest, while Pequiven is solely liable for amounts beyond this liability, as to the additional interest owed in accordance with the terms described above, in section 1., consistent with Pequiven and Isaac's written agreement. The Court orders the parties to meet and confer and thereafter, on or before **June 14, 2023**, jointly submit a proposed final judgment or, if they are unable to agree on the form of the final judgment, separate proposed judgments.

Further, except as touched on above, the Court **denies** the substance of Isaac's motion to strike (**ECF No. 138**) **as moot**. To the extent, however, that Isaac still believes monetary sanctions are warranted, as set forth in the motion, Isaac can renew that aspect of its request but must do so on or before June 14, 2023.

Finally, the Court **cancels** the upcoming **June 13, 2023,** calendar call and **June 20, 2023**, trial setting in this case and directs the Clerk to **administratively close** this case. The Court denies any pending motions as

---

[4] Isaac preemptively addressed the Defendants' affirmative defenses in its motion. (Pls.' Mot. at 5–8.) The Defendants have not, however, established their entitlement to these defenses in the first instance. Accordingly, except where discussed incidentally to the Court's review, these affirmative defenses have not factored into the Court's analysis. *Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997) (Ungaro, J.) ("On a plaintiff's motion for summary judgment, the defendant bears the initial burden of showing that the affirmative defense is applicable."); *see also Singleton v. Dep't of Corr.*, 277 F. App'x 921, 923 (11th Cir. 2008) ("[T]he burden of establishing an affirmative defense lies on the *defendant,* not on the plaintiff . . . .") (emphasis in original).

moot.

**Done and ordered**, in Miami, Florida, on June 6, 2023.

_____
Robert N. Scola, Jr.
United States District Judge